[No. 15155.   Department Two. — August 30, 1893.]

## C D. HARVEY, APPELLANT, *v.* GEORGE F. DUFFEY ET AL., RESPONDENTS.

CONTRACTS — ASSENT. — It is essen'ial to the validity of a contract that the parties should have assented to the same subject-matter in the same sense.

ID. — ORDER FOR CATALOGUED GOODS — MANUFACTURE — SALE — REVOCATION OF ORDER — NOTICE OF ACCEPTANCE. — Where an order is given to an agent of an iron company for the purchase of catalogued goods believed to be in stock, without any knowledge that they would have to be manufactured, and the order for the goods is revoked before notice is given by the company or its agent of the acceptance of the order, and without knowledge that the company was manufacturing the goods, no contract either of manufacture or sale is entered into between the parties.

ID. — ORDER FOR GOODS, WHEN REVOCABLE — PROPOSAL — ACCEPTANCE. — An order for goods is merely an offer or proposal to buy, which is revocable at any time before acceptance of it, or before any reply or notice of the receipt or acceptance of the order is given or communicated to the person giving the order.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

. The facts are stated in the opinion of the court.

*Olney, Chickering & Thomas,* and *Warren Gregory,* for Appellant.

*Edward R. Taylor,* for Respondents.

FITZGERALD, J. — The complaint in this action in substance alleges, that at the time therein stated plaintiff's assignor, the

XCIX. CAL. — 26

A. A. Griffing Iron Company, a New Jersey corporation, manufactured for defendants, at their special instance and request, certain standard hot water radiators of the sizes described, and were ready and willing to ship and deliver the same at the agreed price of $909.72; that after the manufacture thereof defendants notified the corporation not to ship or deliver the goods, as they would not accept or pay for them or for any part thereof, and that they have not paid the whole or any part of said sum; that afterwards, upon due notice to the defendants by the corporation, it resold the goods at public auction to the highest *bona fide* bidder, and that the net proceeds of such sale was $13.25.

The answer specifically denies the allegations of the complaint, except the allegation of notice not to ship or deliver the goods, which is admitted, with the averment that the notice was given before the corporation informed or notified the defendants that it intended to or would manufacture the same, and that said notice was given before and not subsequent to such manufacture.

The facts necessary to be stated are as follows: On April 3, 1890, the defendants had in their possession a catalogue of the Griffing Iron Company, in which was listed the goods in question, and upon the fly-leaf thereof was the following statement: "To enable us to fill our orders promptly, we carry at all times an enormous stock, comprising at all times every style as shown in our list." On that day the defendants, acting upon this statement in the catalogue, sent to the Griffing Iron Company the following telegram:—

"Give us lowest prices on three thousand (3,000) feet, thirty-nine (39) inch hot water standard radiators. Answer.
[Signed]                                "DUFFEY BROS."

On the following day, upon the receipt of this telegram, the Griffing Iron Company telegraphed plaintiff as follows:—

"Duffey Bros. telegraph for prices culprit (hot water) standard. Sell, if necessary, at your price and we will give you ten per cent commission on order if taken from consigned stock. Impossible for them to buy, even cheapest type of radiator, at better than forty-nine cents imbibel (in less than car load lots), and thirty-four cents illusion (in car load lots), in San Fran-·

cisco. Even if you have to give an extra five, don't lose the order. Mich., radiator salesman, is due in San Francisco to-day to see Duffey.

[Signed]    "A. A. GRIFFING IRON Co."

On the same day the company mailed to defendants a letter which, among other things, contained the following: —

"Immediately upon the receipt of your telegram to-day, we wired C. D. Harvey to call on you and name you prices. We trust that before this comes to hand you will have given him your order. . . . .

"We did not wire you an answer, thinking that Mr. Harvey would call and give you personal attention which, no doubt, he did do so. Trusting to receive your order through Mr. Harvey, we remain,    '.    Yours truly,

"A. A. GRIFFING IRON Co."

Harvey, on receipt of the company's telegram, called on the defendants and obtained from them the following order:—

"A. A. GRIFFING IRON Co.: Please ship to us at San Francisco the following Bundy hot water standard radiators, 39 in. high: 145, 1x4; 16, 1x10; 1, 1x20.

"DUFFEY BROS., A."

This order was delivered to Harvey, to be by him transmitted to the company, and was on the same day transmitted by him with the following letter: —

"A. A. GRIFFING IRON Co. — *Gents:* Enclosed I send order from Duffey Bros. for H. W. radiators. Those crossed I can supply from stock here. The balance you will prepare at once, as Mr. D. desires them as soon as possible.

"I will send you Monday a list to make up car load. Your telegram of 4th inst. relating to this order received. I had already given them prices, 60 & 5 off, and now give on such as are here in stock an additional five per cent as you directed.

"Yours truly,    C. D. HARVEY."

At the time the order was given, Harvey in his testimony says: "I told Mr. Duffey at the time that the 1x4 radiator was a radiator that we had never used here in my business, and I did not think the company had them on hand." Duffey testified that "Nothing was said between me and him about the necessity of

manufacturing them. I did not know they would have to be manufactured. They were catalogued and I had the catalogue and acted according to it"; and that when he revoked the order he did not know that the company was manufacturing the goods for him.

On April 18, 1890, the defendants having received no reply whatever to the order sent through Harvey and being in entire ignorance as to whether it had been received, or if received whether it would be accepted, sent a telegram to the company countermanding the order. This telegram was received by the company before the manufacture of the goods was completed, but notwithstanding this fact it proceeded to complete the manufacture of them and afterwards insisted upon the defendants receiving them. This they refused to do, and thereupon the goods were sold by the company at public auction as alleged.

The findings of the court are as follows:—

"1. That at no time did the A. A. Griffing Iron Company manufacture at the special instance or request of the defendants, or at the special instance or request of either of them, or for the defendants, or either of them, any of the hot water radiators mentioned in the amended complaint, or any of the goods described in the amended complaint.

"2. That the defendants did not agree, nor did either of them agree to pay the A. A. Griffing Iron Company for the goods described in the amended complaint, the sum of nine hundred and nine dollars and seventy-four cents ($909.74), or any sum whatsoever.

"3. That defendants did not, subsequent to the manufacture of said goods, notify the A. A. Griffing Iron Company not to ship or deliver the same, but that said modification was prior to the manufacture of said goods, and prior to any notification to the defendants, or to either of them, by said A. A. Griffing Iron Company that it intended to manufacture any of said goods.

"4. That said goods were sold by the A. A. Griffing Iron Company on or about the second day of September, 1890, at public auction, but that said sale was without notice to defendants, or to either of them, or to the world."

And thereupon judgment was accordingly entered for defendants, from which judgment and the order denying his motion for a new trial plaintiff appeals.

The contention of appellant, that the first finding is not justified by the evidence, cannot be sustained.  Conceding to Harvey's testimony all that is claimed for it, that is, that the order was given for the manufacture and not the sale of the goods, and that his testimony fully sustains the allegation of the complaint that the goods were manufactured for the defendants at their special instance and request, yet this is opposed by Duffey's testimony, which is to the effect that in giving the order he dealt solely with reference to a contract of sale, and that nothing was said by any one at any time before the order was revoked as to the necessity of the manufacture of the goods.  Admitting, then, that Harvey, in obtaining the order for the goods, understood that they were to be specially manufactured for the defendants at the prices named, such was not the understanding of the defendants, for it appears that in giving the order to the company through Harvey to ship the goods, they acted upon the representation contained in the catalogue that they were in stock.

It is, therefore, clear (notwithstanding appellant's claim that Harvey, as the agent of the company, was authorized to make the contract alleged and relied on, and that his acts, in this respect, were binding upon the company) that the minds of the parties never met on a contract of manufacture, for "it is essential to the validity of a contract that the parties should have consented to the same subject-matter in the same sense." (*Breckinridge* v. *Crocker*, 78 Cal. 529.)  But the record does not show that Harvey had any such authority.  It is true the telegram to Harvey, dated April 4th, says, "Sell if necessary at your price, and we will give you ten per cent commission on order if taken from consigned stock."  This we think had reference to the company's goods which Harvey had in stock in San Francisco, and this view is further supported by the company's letter to defendants of the same date, acknowledging receipt of their telegram of April 3d, in which it says: "We wired C. D. Harvey to call on you and name you prices. . . . . Trusting to receive your order through Mr. Harvey," etc. From which it would seem that Harvey's authority was limited to naming prices and receiving the order for transmission to the company, and it nowhere appears that defendants had any knowledge other than this of Harvey's authority.  But assum-

ing that he was authorized to sell, he certainly, so far as the record shows, never exercised any such authority, but simply contented himself with receiving the order and transmitting it to the company, by whom it was never accepted, nor was anything said or done by it from which an accceptance could be inferred. In fact, neither the defendants, nor any one for them, ever received any reply or notice whatever of the receipt or acceptance of the order either from the company or Harvey, or any one else, until after they had revoked it. As the order was merely an offer or proposal to buy, it was revocable by the defendant at any time before acceptance, and as there was no acceptance of it by the company before it was revoked, it follows that there was no contract either of manufacture or of sale. It does appear, however, that the company in a letter to Harvey dated April 11th acknowledged the receipt of the order, but this fact was never communicated to defendants until the 20th of April, two days after the order was countermanded, and only then in the most casual manner by the accidental meeting of Harvey and Duffey on the street. Nor did this or any other letter emanating from the company prior to the revocation of the order contain the slightest intimation that it would be necessary to manufacture the goods. But the company's letter to Harvey of the 11th contains language that might be easily construed to the contrary. It is as follows: "Yours of the 5th, containing an order from Duffey Bros., duly received. . . . . Soon as specifications are received to make up the balance of the car load we will forward the same to Messrs. Hawley Bros. Hardware Co. of your city. . . . ." This language was used in reply to that part of Harvey's letter enclosing the order which reads as follows: "I will send you Monday a list to make up car load."

These views apply with equal force to the other exceptions to the findings, except the one relating to the resale of the goods, and that finding is unnecessary to be considered, for the reason that it has no material bearing upon the question upon which this decision rests, and that is that no contract either of manufacture or sale was ever entered into between the parties.

Let the judgment and order be affirmed.

MCFARLAND, J., and DE HAVEN, J., concurred.