[Civ No. 1487. First Appellate District.—July 28, 1914.]

ROBERT BRAGG, as Executor of Will of Mary Jane Bragg, Deceased, Appellant, v. REBECCA BRAGG MARTEN-STEIN, Respondent.

GIFT TO BE CONSUMMATED IN CASE OF DEATH—PACKAGE OF STOCK AND BONDS—INDORSEMENT ON WRAPPER.—An understanding between a man and his daughter that each of them shall prepare papers disposing of their respective properties, which are to be placed in their respective packages, and that, in case it becomes apparent to either that the other is about to die, the former shall put the contents of the package or envelopes of the one about to die into the possession of the parties to whom their inclosures are respectively addressed, is not changed, nor is the agency to make delivery of the package or envelopes of the daughter containing indorsed stock and bonds revoked, by the written indorsement by her on the brown paper wrapper, "In case of my death to be opened only by Robert Bragg, Sr., or Rebecca Bragg Martenstein," who are her father and sister and who are designated as executors in her contemporaneous will disposing of the rest of her estate, there being no direction in any of the writings as to the delivery of the inclosures upon the opening of the package.

ID.—INTERPRETATION OF WORD "ONLY" ON WRAPPER OF PACKAGE.—The word "only," contained in such indorsement, is a limitation upon the persons who might open the package, and not upon the time when it is to be opened.

ID. — CONTEMPORANEOUS WRITINGS — INTERPRETATION TOGETHER.—The writing upon the outside of the wrapper and the writings upon and within its inclosures, if made contemporaneously and as parts of the same transaction by the decedent, are to be construed together; but no part of such writings is to receive an interpretation which will render them unlawful, inoperative, indefinite, unreasonable, and incapable of being carried into effect.

ID.—CIRCUMSTANCES UNDER WHICH WRITINGS WERE MADE—RECOURSE TO IN DETERMINING THEIR MEANING.—It is the duty of a court, when such documents come before it, to place such an interpretation upon the obscure direction of the writing upon the outside of the wrapper as will not only give a reasonable effect to what the writer intended by it, but in so doing, will also render effectual and valid the intent and purpose of the writer as expressed in its inclosures; and in order to do this, it is the province of the court to have recourse to the circumstances under which these several contemporaneous writings were made, as disclosed by the undisputed evidence in the case.

ID.—INTERPRETATION OF CONTRACT—WHEN QUESTION OF LAW.—When a writing requires explanation, and the circumstances surrounding its creation, as disclosed by the evidence, are undisputed, it becomes a question of law for the court, not a question of fact for the jury, to determine what the proper construction of the writing should be.

ID.—INTENTION OF DECEASED—EVIDENCE ESTABLISHING—DIRECTION OF VERDICT.—In this action by the executor of the will of the daughter to recover damages for the alleged conversion of the stocks, the undisputed facts as disclosed by the plaintiff himself, the father, show that it was the life-long purpose and intent of his daughter that her four sisters should be invested with the ownership of the respective shares of stock and bonds which were inclosed in the envelopes respectively indorsed and directed to them, and that this should be done by the delivery of such envelopes to the persons to whom they were directed when it became apparent to her father that she was about to die, that he was to act as her agent in the execution of such purpose, and that no intent on the part of the daughter to change this plan or revoke this agency was ever manifested by her to him during her life; and the court, with all these facts before it, properly instructed the jury to return a verdict for the defendant.

ID.—COSTS OF ADMINISTRATION OF ESTATE—PAYMENT OUT OF DIVIDENDS FROM STOCKS.—An understanding between the daughter and her father that the dividends and income from the stocks and bonds which he had put into the possession of her sisters was to be applied to the costs of administering her estate, is not a condition in any way affecting the validity of the gifts themselves, but at the most an obligation cast upon the respective donees to apply these revenues to the indicated purpose.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

Gerald C. Halsey, for Appellant.

Randolph V. Whiting, and T. A. Perkins, for Respondent.

KERRIGAN, J.—This is an action brought by Robert Bragg, as one of the executors of the last will and testament of his daughter, Mary Jane Bragg, deceased, against Rebecca Bragg Martenstein, another of his daughters, and the coexecutor of the will of his said deceased daughter, to recover damages for the alleged wrongful conversion of certain stocks, the property of the decedent during her lifetime. The case was tried before the court with a jury; upon the conclusion of the testimony and upon motion of the defendant, the court directed the jury to return their verdict in defendant's favor, and it is the alleged error of the court in so doing which presents the chief question for consideration upon this appeal.

The facts of the case are practically undisputed, and are chiefly derived from the testimony of the plaintiff himself. They show that the plaintiff was the father of a family of fourteen children, among whom were five daughters, of whom the deceased, Mary Jane Bragg, was the eldest. For many years Mary Jane Bragg was a teacher in the public schools of San Francisco, during which time she accumulated considerable property, about forty thousand dollars worth of which was invested in the stocks and bonds of various corporations. A number of years ago she retired from teaching, and during the latter years of her life was afflicted with an affection of the heart, from which she was likely to die suddenly at any time, and to which, in fact, her decease was due. In the year 1898, Mary Jane Bragg and her father, the plaintiff herein, entered into an understanding and agreement that each of them should prepare or have prepared papers disposing of their respective properties, which were to be placed in their respective packages and that, in case it become apparent to either that the other was about to die, the former should put the contents of the package or envelopes of the one about to die into the possession of the parties to whom their inclosures were addressed. In pursuance of this arrangement, and during the month of February, 1910, Mary Jane Bragg prepared four envelopes, which contained certain of her stock or bonds, duly indorsed by her; and upon each of said envelopes she wrote the name of one of her said sisters,

with the statement that the inclosure was her property. She then inclosed each of these envelopes in another envelope addressed to that one of her sisters to whom the inner envelope referred. She also at this time made her will, in which she specifically disposed of the rest of her property, but from which she omitted all reference to the stock and bonds which she had thus placed in their respective envelopes. Her father and her sister, the defendant herein, were made the executors of this will. The envelopes above referred to were placed in an open desk in her room, which was at all times open and available to the plaintiff, in whose home she lived and died. The relation between herself, her father, and her sisters was at all times during her life one of unclouded confidence and affection. About four days before her death, in July, 1910, the plaintiff was in her room, having been informed by her physician that she had but a few more days to live, and he himself believing her to be dying, and believing also that the time had come for carrying out her wishes with respect to these several envelopes and their inclosures, he went to her open desk, and taking from it the four envelopes addressed by his dying daughter to her four sisters respectively, went out and mailed each of them to the person to whom each was thus addressed. On the following day he saw the defendant herein, and learning that she had received her envelope by mail, advised her to have the stocks which it contained transferred at once into her own name upon the books of the several corporations, and he gave the like advice to his other daughters, who acted thereon before their sister's death. At the time the plaintiff took the several envelopes in question from the desk of his daughter, she was lying propped up in bed, in full view of her desk and of himself, but was apparently asleep. He did not speak to her then as to what he was about to do, or thereafter as to what he had done, because of her dying condition, although her mind remained clear up to the time of her death; nor did her sisters, acting on his advice, directly refer to the fact of their receipt of her gifts, apparently for the same reason. At the time the plaintiff took these several envelopes from his daughter's desk, they were wrapped, according to the plaintiff's testimony, in a piece of common brown paper and tied with a piece of common string. This wrapper, he states, he threw into a waste-basket, in another room, without looking closely at it;

and there it remained until after his daughter's death, which occurred four days later. Some time after her death he noticed this piece of brown wrapping paper in the waste-basket and observed that it had some writing upon it, in the hand of his deceased daughter, and which was in the following words: "In case of my death, to be opened only by Robert Bragg, Sr., or Rebecca Bragg Martenstein. Signed, Mary Jane Bragg. Dated, San Francisco, Feb. 4, 1910." The piece of this paper containing this writing he preserved. Shortly thereafter the will of Mary Jane Bragg was produced and presented for probate by the plaintiff and the defendant, as the coexecutors thereof. From the petition for probate and the inventory of the estate all reference to the stock and bonds embraced in the envelopes above referred to was omitted; and it was several months after the admission of said will to probate before the plaintiff took any steps in the way of an assertion that the purported gifts of stock and bonds by the deceased to her sisters were invalid or ineffectual, or that their acts in converting the same to their own names and uses, upon his initiative and advice, were wrongful. In the course of his testimony upon the trial of this cause the plaintiff stated that there was an understanding with his deceased daughter that the dividends and income from the stock and bonds which he had put into the possession of her sisters, as above set forth, was to be applied to the cost of administering her estate; but there is nothing either in her direction or in his action indicating that this was to be treated as a condition in any way affecting the validity of the gifts themselves—at the most it was only an obligation cast upon the respective donees to apply these revenues to the indicated purpose, and which would have been enforceable against them in an appropriate action at law.

The foregoing are substantially the undisputed facts in the case, and the sole question which was presented to the trial judge at the time he granted the defendant's motion for an instruction to the jury to find a verdict in her favor, was the question as to what construction should be placed upon the writing of the deceased upon the brown paper wrapper about the envelopes which contained the decedent's proposed disposition of that portion of her estate; and the sole question presented here is as to whether it was the province of the trial court or of the jury to construe that writing and to deter-

mine therefrom whether the decedent intended thereby to change the earlier arrangement entered into with her father, and to revoke his agency to make a delivery of the respective envelopes by which her wishes as to the disposition of those portions of her property embraced therein were to be given effect.

It is to be observed that the writing of the deceased upon the brown paper wrapper, which inclosed the other and directed and indorsed envelopes, and their respective inclosures, is ambiguous and uncertain on its face; and that it becomes more so when considered in connection with said inclosures. It reads "In case of my death to be opened only by Robert Bragg, Sr., or Rebecca Bragg Martenstein. . . . " It is first to be noted that the word "only" is clearly a limitation upon the persons who might open the package and not upon the time when it was to be opened. It is also to be noted that nothing is therein said or intimated as to what is to be done with the envelopes or their contents within the wrapper, when opened, and that no direction is given as to their delivery to any person or persons by those who were to open it. Neither did the inclosures contain any such direction. This absence of any instruction as to the delivery of the inclosed documents is highly important and significant, as bearing upon the interpretation of the writing on the wrapper and the real purpose and intent of its writer, for it indicates that she did not have the idea of the delivery of the papers in mind in making this writing, and hence that she did not intend thereby to change whatever previous direction she may have given respecting the delivery of the inclosed envelopes. To adopt any other view is to place an interpretation upon this writing which would render ineffectual and abortive her every other intent and act as expressed in the writings within the wrapper, and in this connection it is important to note that the writing upon the outside of the wrapper and the writings upon and within its inclosures were made contemporaneously and as parts of the same transaction by the decedent, and are to be construed together. (Civ. Code, sec. 1642.) When so construed it becomes all the more apparent that the writing upon the wrapper cannot have any reference to the delivery of the papers within it with a view to the time of their taking effect, for otherwise it would defeat and render void every purpose for which these papers were

prepared and indorsed and inclosed within their respective envelopes, and it is a cardinal rule of construction that no part of a writing or of several contemporaneous writings is to receive an interpretation which would render it or them unlawful, inoperative, indefinite, unreasonable, and incapable of being carried into effect. (Civ. Code, sec. 1643.) Such would be the inevitable effect of interpreting the writing upon the outside of this wrapper to mean either that the opening of the package or the delivery of the inclosed papers was to be postponed until after the death of the person who prepared them. · It is the much more consistent and reasonable interpretation that it was merely the writer's intention that if for any reason the inclosed documents were not delivered before her death, in accordance with her other arrangements in that regard—as for instance, they might not be, by reason of the suddenness of her decease—that then and in that event they should pass into the hands only of those whom she had designated in her contemporaneous will to be the executors of her estate. It was a legal duty cast upon the trial court to place such an interpretation upon the obscure direction of the writing upon the outside of this wrapper as would not only give a reasonable effect to what the writer intended by it, but in so doing, would also render effectual and valid the intent and purpose of the writer as expressed in its inclosures. In order to do this, it was the province of the court to have recourse to the circumstances under which these several contemporaneous writings were made, as disclosed by the undisputed evidence in the case. (Civ. Code, sec. 1647.) It is also a rule of construction and of practice that, when a writing requires explanation and when the circumstances surrounding its creation, as disclosed by the evidence, are undisputed, it becomes a question of law for the court and not a question of fact for the jury to determine what the proper construction of the writing should be. In this case, the undisputed facts as disclosed by the plaintiff himself, show that it was the life-long purpose and intent of his daughter that her four sisters should be invested with the ownership of the respective shares of stock and bonds which were inclosed in the envelopes respectively indorsed and directed to them, and that this should be done by the delivery of such envelopes to the persons to whom they were directed when it became apparent to her father that she was about to die; and that he was to be and

act as her agent in the execution of this purpose; that no intent on the part of his daughter to change this plan or revoke this agency was ever manifested by her to him during her life, although they were living at all times together in the utmost of mutual harmony and confidence, which relations also at all times embraced the beneficiaries of her intended gifts. These undisputed facts surrounding these ambiguous writings of the deceased were before the court when the motion of the defendant for an instruction to the jury to return a verdict in her favor was made, and we think it was the province of the court, as a matter of law, to determine the intent of the deceased as disclosed by her writings and explained by this evidence, and to instruct the jury accordingly, and that the court committed no error in its instruction.

There are certain other alleged errors of the court during the trial of the cause, but they are not of sufficient importance to merit consideration here.

The judgment and order denying plaintiff's motion for a new trial are affirmed.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 26, 1914.