[Civ. No. 3774.  First Appellate District, Division Two.—October 31, 1921.]

## ORVILLE R. CALDWELL, Appellant, v. WESTERN DEVELOPMENT COMPANY (a Corporation), et al., Respondents.

[1] PLEADING—SUFFICIENCY OF DENIALS—WAIVER OF OBJECTIONS.—In an action against a corporation and an individual, in which it is alleged that said individual owns all the stock of said corporation, where the answer of one of the defendants denies that said defendant "did, or now does, or at any time mentioned in the complaint on file herein, own all of the stock" of said corporation, and alleges "that he only owned five per cent of stock in said company," and the answer of the other defendant denies "that at any time mentioned in said complaint" said individual "owned more than about five (5) per cent of stock" in said corporation, and during the trial no question as to the sufficiency of such denials is presented to the trial court, such denials must be considered as sufficient on appeal.

[2] PARTNERSHIP—TERM OF LEASE—SETTLEMENT BETWEEN PARTNERS ON TERMINATION—CONTRACTS.—Where two individuals take a lease of certain ranch and then enter into a partnership agreement for the purpose of conducting the business thereon, such partnership agreement is properly silent as to whether either partner can terminate the lease at any time, by withdrawing from it, or whether the other partner could continue the lease by settling with the one withdrawing, those being matters affecting the lessor, to be provided for in the lease, if at all, and such lease is properly silent as to the manner in which the partners should settle between themselves in the event of a termination thereof.

[3] LANDLORD AND TENANT—DUTY TO PLANT ALFALFA—RIGHT OF LESSOR TO WAIVE.—Where a lease provides that the lessees are "to properly check and sow ten acres of alfalfa each year" and also provides in legal effect that the welfare of the operations of the ranch shall be under the personal supervision of the lessor, the latter has the right to direct, in any one year, that the alfalfa seed need not be planted.

[4] ID.—LOSS TO PROPERTY—LIABILITY OF LESSEES TO REPLACE.—Where a lease covers certain lands and buildings, and certain personal property thereon and to be added thereto, and further provides that the lessees are "to return all stock, tools, buildings, equipments, horses, and everything in as good condition as they received it, at the expiration of this lease" and "to abandon and give peaceable possession of the premises, stock and tools, in as

good a condition, and the same kind, as there now are on these premises," and no exception whatever is written into the contract, the lessees are liable for all loss or damage, to either the personal property or the real property, whether due to their fault or negligence or to any other cause.

[5] CONTRACTS—CONSTRUCTION OF—ABSENCE OF AMBIGUITY.—In this action involving, among other things, the proper construction to be placed upon a certain lease and a partnership agreement entered into by the lessees, neither of the instruments were void for ambiguity, it being possible to readily ascertain the intention of the parties by merely following the well-established rules governing the interpretation of contracts.

[6] ID. — SEVERAL OBJECTS — PARTIAL VAGUENESS — VALIDITY OF REMAINDER.—Where each of those instruments contained several objects, and neither instrument was so vaguely expressed as to each and all of those several objects as to be wholly unascertainable, neither instrument was wholly void.

[7] ID.—EXECUTED CLAUSES—VAGUENESS IMMATERIAL.—When each of those instruments became executed contracts as to every clause except the division of the "gross proceeds" between the partners, the time then expired during which any of the other clauses therein could be questioned.

[8] TRUSTS—DELIVERY TO THIRD PERSON—RIGHT TO SELL—CONVERSION —ACCOUNTING.—Where the lessees of a stock ranch, by the agreement of all the parties, leave the ranch and turn it over to a third person to manage and operate, or liquidate, as the necessities might demand, such third person becomes the trustee of the partners, and he is not guilty of conversion in selling the property, but, in a proper case, he can be required to account to the partners for matters arising during his trusteeship.

[9] JUDGMENT — ACTION FOR CONVERSION — RIGHT TO ACCOUNTING — PARTIES.—The complaint of plaintiff, one of the partners, tendering an issue as in conversion, having been against the corporation lessor and against the person who became trustee for the partners, and such defendants, both by demurrer and during the trial, having interposed the objection that the existence of a partnership was shown, that the other partner was not made a party, that such other partner was a necessary party, and that plaintiff's rights could not be ascertained until such other partner was made a party and an accounting was had, and plaintiff having resisted those attacks and opposed any procedure to have such other partner brought in, and not having produced any evidence that the defendants received any moneys for which they should account, he cannot on appeal complain because the trial court did not order an accounting instead of giving judgment in favor of the defendants.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Pat R. Parker, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

F. H. Dam for Appellant.

C. W. Humphreys and E. F. Conlin for Respondents.

STURTEVANT, J.—Plaintiff commenced an action to recover a money judgment against the defendants; a trial was had, the court sitting without a jury; the defendants had judgment and the plaintiff appealed under the new method.

In his complaint the plaintiff alleged that the Western Development Company was a corporation; that defendant W. S. Gray owned all of the stock of the corporation and was executive officer and manager; that in May, 1917, acting on the suggestion of the defendant W. S. Gray, the plaintiff and John C. Gray (son of W. S. Gray) as partners, and the corporation, executed a lease or agreement; that at the same time plaintiff and John C. Gray executed a partnership agreement; that thereafter the corporation turned over to the partnership livestock estimated at $1,446.50 and purchased other stock which, added thereto, aggregated $3,253.31; that plaintiff paid $1,084.40, that he devoted his time from May 21 until December 22, 1917, of the reasonable value of $510; that he expended $240 on feed and supplies; that on the twenty-sixth day of December, 1917, the plaintiff discussed with "the defendant W. S. Gray the question whether plaintiff would be subject to conscription in the United States army; that thereupon and on said day the defendant, W. S. Gray, stated to the plaintiff that both plaintiff and the said John C. Gray probably would be subject to such conscription and that it would be better for the plaintiff and said John C. Gray to enlist at once in such branch of the service as they respectively preferred; that said defendant further stated to plaintiff, as an inducement to such enlistment on the part of plaintiff, that said defendant would make a fair and just settlement with plaintiff of all that would be coming to plaintiff out of said farming enterprise in which the said parties were then, as aforesaid, engaged; and that said defendant

then and there further stated, as an additional inducement for plaintiff's enlistment in the military service of the United States, that, if necessary, the said defendant, himself, would go up to said ranch and actively manage and operate the same for the benefit and advantage of the said several parties interested therein." It is further alleged that on the second day of January, 1918, plaintiff did enlist and subsequently remained in the said service; that thereafter the said W. S. Gray "sold all of the cattle, hogs, and other livestock, and all of the personal property of whatsoever kind hereinabove mentioned and has converted the money and the whole thereof received therefore"; that defendants have failed and refused to account to plaintiff. Thereupon plaintiff prays judgment for $1,834.40, being the amount of the moneys by him invested, and the value of his labor. **[1]** The defendants each answered separately; no demurrer was interposed to the answer of either one. In one answer the pleading is: "Denies that defendant W. S. Gray did, or now does, or at any time mentioned in the complaint on file herein, own all of the stock of the Western Development Company, a corporation, and in this connection defendant alleges that he only owned five per cent of stock in said company." The other answer is worded: "Denies that at any time mentioned in said complaint that W. S. Gray owned more than about five (5) per cent of stock of the Western Development Company." During the trial no question as to the sufficiency of such denials was presented to the trial court. Such denials must now be considered as sufficient. (*Grogan & Lent* v. *Ruckle*, 1 Cal. 193, 196; 2 Hayne on New Trial and Appeal, sec. 280.) With the exception of the allegation as to ownership of stock, the trial court found in the language of plaintiff's complaint in plaintiff's favor on every allegation which we have mentioned above; but gave judgment in favor of the defendants. Both in the trial court and in this court the defendants have contended that the plaintiff may not maintain this action, or any action, regarding the subject matter except that he make John C. Gray a party, and then, and in that event, the only proper action for the plaintiff to maintain is an action for an accounting. The plaintiff has contended that such would ordinarily be the rule, but that both of the instruments, the lease and

the partnership agreement, are void as being wholly ambiguous. (Civ. Code, sec. 1598.) If this contention on the part of the plaintiff is well founded, then it may be assumed without going into the matter that the judgment should be reversed; but, if the plaintiff is mistaken in such contention, then the judgment must be affirmed.

[2] We shall take up first the consideration of the attack made on the partnership agreement. It is, you cannot tell from the partnership agreement (1) whether either partner could terminate said lease at any time, by withdrawing from it, or (2) whether the other partner could continue the lease by settling with the one withdrawing. As to the first item, the instrument is, very properly, silent. Such subject should be provided for in the lease, if at all. The lessor would be entitled to be heard before the lease could be terminated. As to the second item, the instrument is, very properly, silent. If one partner retires from the contract it is a matter concerning the lessor and the remaining lessee what the future terms are to be—not a subject to be inserted in a dissolved contract. The instrument provides, in the event the lease is terminated, how the partners may settle between themselves. The passage is reasonably clear and is not attacked by the plaintiff.

In elucidating his contention that the lease is void for ambiguity the plaintiff enumerates: that it cannot be ascertained whether the lessees were to divide the gross returns, gross receipts, profits, or receipts; whether the lessees were to retain and later return the specific stock, or whether certain portions were to be sold from time to time; whether anyone of the three parties had the right to terminate the lease; whether, upon the termination of the lease, the parties were entitled to share in the profits or only in losses, and whether it was the duty of the lessees to check and sow ten acres of alfalfa each year in any event, or only by direction of the lessor. The plaintiff also enumerates; that it cannot be ascertained whether damage by fire is to be borne by the lessees in the first instance, and thereafter shared by the lessor; whether the duty of restoring burned buildings applies to all fires or merely fires caused by the fault or negligence of the lessees; whether the lessees are to make good all stock that dies from any cause or only stock that dies by the fault or negligence of the lessees, and whether

it is the duty of the lessees to furnish necessary feed even though feed must be purchased at great cost.

The foregoing attacks, in the order stated, we shall now consider. The lease provided that the lessees "for a full and final remuneration for their services and investments were to receive one-half of the gross proceeds." That passage clearly answers the first attack. The evidence showed that the lessor had been engaged in the business of raising, buying, and fattening stock and then selling the same, and that it was such business which he leased to the lessees and which they were to conduct. Therefore, it is clear that the lessees were not to retain and return the specific stock, but were to return an equal number in kind. It is provided: "This lease shall terminate on the first day of March, 1920, and if for any reason, any or either party to this lease shall, for any reason, wish to terminate the same, the retiring party shall suitably recompense the remaining party for any loss that they may sustain by reason of such retirement." In the event of a termination of the lease the instrument is silent as to the manner in which the partners should settle between themselves. This is as it should be. Such a matter was a concern of the two partners and not a concern between the lessor and the lessees. [3] It is provided in the lease that the lessees are "to properly check and sow ten acres of alfalfa each year," and it is also provided in legal effect that the welfare of the operations of the ranch shall be under the personal supervision of the defendant corporation. Therefore the defendant corporation had the right to direct, in any one year, that the alfalfa need not be planted. [4] The lease covered certain lands and buildings, and certain personal property thereon and to be added thereto, and it further provided "to return all stock, tools, buildings, equipments, horses, and everything in as good condition as they received it, at the expiration of this lease . . . to abandon and give peaceable possession of the premises, stock and tools, in as good a condition, and the same kind, as there now are on these premises." No exception whatever was written into the contract. It follows that the meaning of the contract is exactly what is written on the face thereof. A similar question was presented in *Polack* v. *Pioche,* 35 Cal. 416, and, at page 422 [95 Am. Dec. 115],

the court said: "A general covenant to repair is binding upon the tenant under all circumstances. If the injury proceeds from the act of a stranger, from storms, floods, lightning, accidental fire, or public enemies, he is as much bound to repair as if it came from his own voluntary act. Such has been the settled rule since the time of Edward III. (2 Platt on Leases, 186, 187, and cases there cited.) If the tenant desires to relieve himself from liability for injuries resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operation of his covenant." The principle is applicable alike to covenants regarding personal property as well as to real property. That case was cited with approval in *Ahlgren* v. *Walsh,* 173 Cal. 27, 32 [Ann. Cas. 1918E, 751, 158 Pac. 748]. In support of his contention concerning ambiguous instruments, the appellant cites to us a number of cases; some of them do not deal with so-called ambiguous instruments but do deal with and consider inchoate instruments. (*Donnelly* v. *Adams,* 115 Cal. 129 [46 Pac. 916]; *Talmadge* v. *Arrowhead R. Co.,* 101 Cal. 367 [35 Pac. 1000]; *Harvey* v. *Duffey,* 99 Cal. 401 [33 Pac. 897]; *Durst* v. *Jolly,* 35 Cal. App. 184 [169 Pac. 449].) The case of *Peerless Glass Co.* v. *Pacific etc. Co.,* 121 Cal. 641 [54 Pac. 101], does deal with an ambiguous instrument but is not otherwise helpful. *Van Slyke* v. *Broadway Ins. Co.,* 115 Cal. 644 [47 Pac. 689, 928], is more nearly in point. But in that case the supreme court remanded the case to the trial court to enable the plaintiff to plead and prove the omitted parts of the contract, if any had been omitted. **[5]** In the instant case, the instrument is not so frail; on the other hand, each instrument is so framed that one can readily ascertain the intention of the parties by merely following the well-established rules governing the interpretation of contracts. (Civ. Code, secs. 1635–1661; *Sutliff* v. *Seidenberg, Stiefel & Co.,* 132 Cal. 63 [64 Pac. 131, 469].)

**[6]** Again, each instrument contained several objects. Neither instrument was "so vaguely expressed" as to each and all of those several objects "as to be wholly unascertainable." Neither instrument, then, was wholly void. (Civ. Code, sec. 1598.)

[7]   Moreover, when on December 26, 1917, the defendant, W. S. Gray, took over the management of the business, each of the instruments became executed contracts as to every clause except the division of the "gross proceeds." The time then expired during which any of the other clauses could be questioned. To discuss them now is to discuss moot questions.

[8]   The plaintiff and John C. Gray were partners. As such partners they were the lessees down to the date in December when they enlisted. In taking the step of leaving the ranch and turning the same over to W. S. Gray, as alleged and found by the trial court, they did not act wrongfully, but all parties acted by agreement. Thereupon W. S. Gray became the trustee of the partners to manage, or liquidate, as the necessities might demand. When thereafter he sold the personal property he was acting within his rights as such trustee and was not guilty of conversion. (*Bragg v. Martenstein*, 25 Cal. App. 199 [143 Pac. 79].) However, in a proper case, he could have been required to account to the two partners for matters arising during his trusteeship.

[9]   The plaintiff complains because the trial court did not order an accounting instead of the judgment which it did order. The attack is wholly without merit. When the defendants appeared they presented long demurrers. It was the very gist of each and all of the demurrers that plaintiff's complaint showed the existence of a copartnership, that John C. Gray was a partner and a necessary party, and that the plaintiff's rights could not be ascertained until John C. Gray was made a party and an accounting was had. The plaintiff resisted those attacks and induced the trial court to overrule the demurrers. During the course of the trial the defendants made objections to various questions, the force of the objection being that the subject matter was immaterial if John C. Gray was not a party. All of such objections were countered by the plaintiff. Finally, the defendants made a motion for a nonsuit and in the motion they included the same attack. That motion was opposed by the plaintiff and later it was withdrawn, and the case was submitted. It is patent that John C. Gray was a partner. However, before it can be adjudged that he was a partner, and that an accounting should be

had, he is entitled to be made a party and to be heard on that very issue. At the end of the plaintiff's case the trial court did not have the jurisdiction to order amendments and to order John C. Gray to be brought in and made a party except that the proceedings, theretofore had and taken, be had anew. No such motion by the plaintiff was ever made in the trial court, but, on the other hand, such procedure was by him at all times opposed. At this time he may not change his position. Again, it does not appear that a fund exists for which an accounting should be had. The plaintiff asserts the fact was admitted by the pleadings. In this assertion we think he is in error. In the trial court he treated the pleadings as making an issue as in conversion but he never produced any evidence that the defendants received any moneys for which they should account.

It follows that the judgment should be affirmed, and it is so ordered.

Langdon, P. J., and Waste, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 26, 1921, and on November 30, 1921, the foregoing opinion was modified by the district court of appeal as follows:

THE COURT.—In petitioning for a rehearing, the appellant has earnestly contended that the statement of facts contained in the opinion heretofore filed precludes him from properly presenting the matter to the supreme court of this state upon application for a hearing there. The following portions of the pleadings are asked to be made a part of the opinion of this court:

The complaint alleges that:

"W. S. Gray, without obtaining or asking the consent of the plaintiff, and without notice to plaintiff, has sold all of the cattle, hogs and other livestock and all the other personal property of whatsoever kind hereinabove mentioned and has converted the money and the whole thereof received therefor to the use of the said defendants; that defendants have failed and refused and do now fail and refuse to account to plaintiff therefor . . . ; but said defendants

have appropriated and do now appropriate the same and the whole thereof to their own benefit and advantage."

The defendant corporation answered the foregoing allegation as follows:

"Denies that this defendant without obtaining or asking the consent of plaintiff or without notice to plaintiff sold all of the cattle and hogs and livestock and all other personal property whatsoever on said ranch; . . . denies that this defendant has appropriated the whole or any part of any money or thing of value which belongs to or in which plaintiff is interested to its own use and benefit or advantage."

Defendant W. S. Gray answers the foregoing allegations of the complaint as follows:

"Denies that this defendant converted the money and the whole thereof obtained from the sale of said cattle and the personal property to his own use."

The foregoing extracts from the pleadings are hereby made a part of the opinion heretofore filed herein, for the benefit of the appellant.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 29, 1921.

All the Justices concurred, except Waste, J., who did not vote.

Lawlor, J., was absent; Richards, J., *pro tem.,* was acting.