[Civ. No. 6263. First Appellate District, Division One.—August 29, 1928.]

THE MASTER BUILDERS COMPANY, Respondent, v. CLINTON CONSTRUCTION COMPANY OF CALIFORNIA, Appellant.

Ernest K. Little for Appellant.

Willard P. Smith and Walton C. Webb for Respondent.

CAMPBELL, J., *pro tem.*—This is an appeal from the judgment awarding plaintiff $3,060 upon a contract found by the court to have been entered into between plaintiff, an Ohio corporation, and defendant, a California Corporation, whereby plaintiff agreed to manufacture for and deliver to defendant 21,500 pounds of Colormix at twenty-two cents per pound, to be delivered f. o. b. Cleveland, Ohio, between January 21 and May 1, 1925, upon which contract plaintiff manufactured and delivered between January 21 and April 13, 1925, 3,550 pounds of the Colormix and was at all times ready and willing to deliver the balance, but that defendant refused to accept the same, and finding that by reason of defendant refusing to accept the balance of the Colormix called for in the contract that plaintiff was damaged in the sum of $3,060, for which judgment was entered, and from such judgment defendant has instituted this appeal.

Appellant urges under general headings the following points on which he relies for a reversal of the judgment: (1) There was no meeting of the minds of the parties; (2) an oral order would have been within the statute of frauds; (3) plaintiff did not perform nor offer to perform the alleged contract on its part; (4) the vice-president of defendant corporation had no authority to bind the corporation by an oral order; (5) the complaint does not set forth facts sufficient to constitute a cause of action.

Under the first general heading appellant asserts: "(a) plaintiff communicated its acceptance of a written proposition, bearing the false signature of defendant and its vice-

president, but which was never submitted to defendant; (b) there was no acceptance by either party; (c) there was no acceptance communicated until February 3, 1925, while Mr. Rodgers admits that he knew, as early as January 30, 1925, that Mr. Huber desired to withhold the alleged order for redtile Colormix; and (d) the letter of January 21, 1925, from Mr. Rodgers was not a proposition from plaintiff; it was merely a suggestion from Mr. Rodgers as to the proposition which defendant should make to plaintiff.'' These four contentions may be considered together.

The record contains the following evidence relative to the transaction between the parties. In January, 1925, Joseph E. Rodgers, local agent of plaintiff, called upon A. Huber, vice-president of defendant corporation, at defendant's place of business and discussed the placing by defendant of the order for Colormix. Mr. Rodgers testified: ''We figured up the quantity of material that would be required from the plans and specifications of the San Francisco Relief Home,'' and Mr. Huber then placed the order at twenty-seven cents per pound. Mr. Huber stated that ''for the quantity involved the price was, in his judgment, a little bit high,'' and in an effort to secure a price that might be a little more favorable to defendant he (Rodgers) wired to Cleveland and received a reply to his telegram by wire, which he showed Huber, ''Best price on eighteen thousand pounds Red Colormix twenty two cents per pound F. O. B. Cleveland.'' Mr. Rodgers further testified as follows: ''Mr. Huber then told me to go ahead and write up the order on the basis of 18,000 pounds of one color and 3500 pounds of another color, which I did. He requested if I could not make that price which was mentioned in the telegram the guarantee delivery price at San Francisco, and I said that that would be impossible, because it would—as the material was then requested for delivery later in the year, I didn't know definitely whether a carload of material would be coming forward at that time, in which this could be included, or whether it would have come by itself, and, of course, it would take different rates of freight both ways. I then phoned in Mr. Huber's—I phoned the railroad—and told him the difference in the rates between the two materials and why it was impossible for me to give a guarantee delivery price at San Francisco. I told Mr. Huber then if a

full car was coming forward at the time when he would require his material, that the company would give him the benefit of the carload rate rather than L. C. L. (less carload lots) rate, but that I wanted it understood that if we did not have a car coming forward that he would have to pay the 22 cent price f. o. b. Cleveland plus whatever freight was involved."

Mr. Rodgers wrote and mailed a letter, which bears date January 21, 1925, to defendant, containing the following: "Confirming our verbal agreement of today, we are entering your order for 18,000 lbs. Master Builders Tile Red Colormix and 3500 lbs. Battleship Gray Colormix, at the agreed price of 22c per pound, F. O. B. Cleveland Ohio,— same price both colors." Mr. Rodgers received no reply to this letter. Prior to February 5, 1925, Rodgers received a phone message from Mr. Huber requesting that the red part of the order be held up and Rodgers informed him that it would be impossible to hold up any part of the order originally given because the matter was entirely in the hands of the Master Builders Company, and they would be the ones to come to any decision regarding the matter. On January 23, 1925, Rodgers filled out an order blank and forwarded it to plaintiff calling for 18,000 pounds of red Colormix and 3,500 pounds of battleship gray and at the bottom wrote in the name under the signature of purchaser, "Clinton Const. Co. A. Huber." On February 5, 1925, defendant wrote J. E. Rodgers & Co.: "Kindly enter our order for approximately 3500 lbs. Battleship Gray Colormix. Price: 22 cents per pound, f. o. b. Cleveland, Ohio. Deliveries: 700 lbs. immediately. Balance April 1–1925. Confirming our telephonic conversation of recent date, we wish to inform you that we have not made a decision on the type of red color hardner we intend to use. We will mail you a written order should we decide to use 'Master Builders' Red Tile Colormix." Plaintiff wired to defendant, February 5, 1925, as follows: "Our representative Rodgers advises substitution for Colormix order being attempted Stop Be advised that order accepted manufactured for you and partly shipped Stop Can accept no change or cancellation See order signed by your Mr. Huber."

Sylvester W. Flesheim, president of plaintiff corporation, testified that J. E. Rodgers & Company of San Francisco

acts as their sales agent in California; that J. E. Rodgers & Company is authorized to solicit orders subject to their approval; that every order J. E. Rodgers & Company receives must be sent to plaintiff at Cleveland for acceptance; that when plaintiff received the telegram from Rodgers containing the order of 18,000 pounds of red Colormix and 3,500 pounds of gray Colormix, the order was immediately accepted and defendant notified accordingly; that tile red Colormix is not a product that has a ready market and little is carried in stock; that 18,000 pounds is a very large order and that when the order was accepted instructions were immediately given to the factory to manufacture the material.

There was clearly a meeting of minds when defendant accepted the price of twenty-two cents in the telegram from plaintiff and confirmed in Rodgers' telegram to plaintiff. The fact that plaintiff in its telegram to defendant of February 5, 1924, stating that it would accept no cancellation or modification of the order, referred to the order signed by Huber, does not alter the situation, as the written order to which Rodgers attached Huber's name was merely an order reciting the terms of the verbal contract before entered into. If this were a case where it was agreed that the terms of the verbal contract were subsequently to be reduced to writing, there would be merit in defendant's contention (*Las Palmas etc. Distillery* v. *Garret & Co.*, 167 Cal. 399 [139 Pac. 1077]), but such is not the case here.

The conclusion reached in the present case is not, as claimed by appellant, in conflict with the rule announced in *Harvey* v. *Duffey*, 99 Cal. 401 [33 Pac. 897]. In the Harvey case the defendants had in their possession a catalogue of the Griffing Iron Company in which was listed the goods in question (radiators), and upon the fly-leaf thereof was the following statement: "To enable us to fill our orders promptly, we carry at all times an enormous stock, comprising at all times every style as shown in our list." On April 3, 1890, the defendants, acting upon the statement in the catalogue, sent to the Griffing Iron Company a telegram asking for the lowest price on radiators. The company did not reply to this telegram, but wired plaintiff to call upon defendants and quote the price. On receipt of the wire Harvey called upon defendants and ob-

tained the following order: "A. A. Griffing Iron Co.: Please ship to us at San Francisco the following Bundy hot water standard radiators, 39 in. high: 145, 1x4; 16, 1x10; 1 1x20. (signed) Duffey Bros. A." This order was delivered to Harvey and by him mailed to the A. A. Griffing Iron Company. Defendant Duffey testified that nothing was said to him about the necessity of manufacturing the radiators; that he did not know that they would have to be manufactured; they were catalogued, and he had the catalogue and acted accordingly, and that when he revoked the order he did not know that the company was manufacturing the goods for him. On April 18, 1890, the defendants having received no reply whatever to the order sent through Harvey and being in entire ignorance as to whether it had been received, or if received whether it would be accepted, sent a telegram to the company countermanding the order. This telegram was received before the manufacture of the goods was completed, but notwithstanding that, the company proceeded to complete the manufacture of them. The court held "that the minds of the parties never met on a contract to manufacture for 'it is essential to the validity of a contract that the parties should have consented to the same subject matter in the same sense' (*Breckinridge* v. *Crocker*, 78 Cal. 529 [21 Pac. 179]) . . . But assuming that he (Harvey) was authorized to sell, he certainly, so far as the record shows, never exercised any such authority, but simply contented himself with receiving the order and transmitting it to the company, by whom it was never accepted, nor was anything said or done by it from which an acceptance could be inferred. In fact, neither the defendants, nor any one of them, ever received any reply or notice whatever of the receipt or acceptance of the order, either from the company or Harvey, or anyone else, until after they revoked it. As the order was merely an offer or proposal to buy, it was revocable by the defendants at any time before acceptance."

The facts in the case quoted from and in the present case are not analogous. Here Rodgers called upon Huber, the vice-president and manager of defendant corporation, who placed the order with him for the Colormix at twenty-seven cents per pound, but as Huber thought a better price could be made for such a quantity of the material, Rodgers tele-

graphed plaintiff in an effort to secure for defendant a better price and received a wire in reply, making the price twenty-two cents. Rodgers then, at the direction of defendant, wrote up the order. Flesheim, the president of plaintiff corporation, testified that when he received the telegram from the agent Rodgers containing the order for 18,000 pounds of red Colormix and 3,500 pounds of battleship gray Colormix, he took the matter up with Mr. Bertsch and Mr. Krause of the Master Builders immediately, and the order was then accepted and Mr. Krause instructed to write the Clinton Construction Company accordingly. On January 21, 1925, Rodgers wrote defendant confirming the verbal agreement of that date and notifying defendant that he was entering the order for 18,000 pounds of red Colormix and 3,500 pounds of battleship gray Colormix at the agreed price of twenty-two cents per pound f. o. b. Cleveland, Ohio, and telegraphed the order to the plaintiff company on January 24th. █ While it is true that Rodgers in his letter advised defendant that it incorporate in its confirming order the request "if it is possible at the time of actual shipping date—approximately June 1st, this material will come forward in carload lots so that we can enjoy carload rate rather than L. C. L. rate," and concluded the letter by thanking defendant for "this very splendid business," this did not alter or affect the contract but merely the freight rate which defendant was obliged to pay.

It will be noted that in *Harvey* v. *Duffey* the defendants advertised in their catalogue that they had the radiators listed therein in stock for immediate delivery and therefore the manufacture thereof would not be necessary, and the court held that there was no meeting of minds on a contract to manufacture, which fact was not an element here. It further appears in that case that the defendants never "received any reply or notice whatever of the receipt or acceptance of the order from the company or Harvey or anyone else" before it was rescinded, while here the defendant was notified by Rodgers on January 21, 1925, of the fact that the order was entered and a portion of the material ordered was delivered to and accepted by defendant before the red Colormix portion of the order was attempted to be canceled or ordered held in abeyance by Huber's tele-

phone of January 30th to Rodgers and his letter of February 5th.

■ As to appellant's second point that the oral agreement is within the statute of frauds in that "(a) there is no evidence to sustain the finding of the court that there was a contract to manufacture; and (b) the gray Colormix was not accepted as and for a part performance of the alleged oral order"; it may be said Mr. Huber in his testimony admitted that a part of the Colormix was received and used in the building for which it was ordered. "Q. Is it not a fact that the gray Colormix was used on this job and part of the red? A. Yes. Q. Where was it used, on the sidewalks? A. No, on the floor. Q. But the gray was used first? A. Yes. Q. Is it not a fact that you got some shipment in January? A. Of the gray. Q. Of the gray. A. We might have; I think we did probably." This is sufficient under section 1739 of the Civil Code to take the oral agreement out of the statute of frauds. The fact that the gray Colormix "and part of the red" was used on the job is sufficient to sustain the finding that the gray Colormix was accepted as a part performance of the oral contract.

■ From the foregoing it is apparent that there is no merit in appellant's third contention "that plaintiff did not perform nor offer to perform the alleged contract on its part," nor that defendant, in accepting the offer of plaintiff, added a new stipulation to the acceptance and the acceptance was not therefore "absolute and unqualified" and that the stipulation in regard to freight rate constituted a new proposal. As has already been said, Rodgers' statement to Huber that if a full car was coming forward at the time when he would require his material, the company would give him the benefit of the carload rate, but that he wanted it understood that if they did not have a car coming forward he would have to pay the twenty-two cents f. o. b. Cleveland, plus whatever freight was involved, did not alter the contract, but was merely an offer on the part of Rodgers to save defendant money on freight, if he could do so.

It may likewise be said that appellant's fourth and fifth contentions, viz., that the vice-president of defendant corporation had no authority to bind the corporation by an oral order, and that the complaint does not state a cause

of action, are likewise without merit. It is true that Mr. Huber testified that he never did give any orders unless they were in writing, as it is against the rules of the company; he further stated that as vice-president of the company he had charge of buying the materials for jobs. It appears that Mr. Huber was vice-president and manager of the corporation and, therefore, as such, could bind the corporation (*Eels* v. *Gray Bros. etc. Co.*, 13 Cal. App. 33 [108 Pac. 735]; *Fowler Gas Co.* v. *First Nat. Bank*, 180 Cal. 471 [181 Pac. 663]; *Davis* v. *Pacific Studios Corp.*, 84 Cal. App. 611 [258 Pac. 440]). The court, having determined that Mr. Huber did enter into the oral agreement here, evidently did not place credence in his statement that he never gave verbal orders.

 The objection to the complaint is that the allegation on which damages are based is insufficient. The paragraph objected to is: "That defendant has wholly failed and refused to take the balance of said Colormix and that plaintiff had incurred liability for commissions on the sale of the same, and has lost the profits arising from said sale, and has thereby been damaged in the premises in the sum of Three Thousand and Sixty ($3,060.00) Dollars." This allegation is sufficient (*Ahlers* v. *Smiley*, 163 Cal. 200 [124 Pac. 827]; *Tahoe Ice Co.* v. *Union Ice Co.*, 109 Cal. 242 [41 Pac. 1020]).

We have examined the authorities cited by appellant and do not question the principles they announce, but merely their application to the facts in the present case.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 27, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 25, 1928.

All the Justices present concurred.