[L. A. No. 422. Department Two.—August 10, 1898.]

## PEERLESS GLASS COMPANY, Respondent, v. PACIFIC CROCKERY AND TINWARE COMPANY, Appellant.

Sale of Merchandise—"Freight Allowance"—Insufficient Contract.— A contract for the sale of merchandise shipped from Indiana to this state, providing that the "freight allowance to Los Angeles from Converse is seventy-four cents," considered in view of evidence that the term "freight allowance" imports a discount allowed from the invoice price of goods shipped from the east to a purchaser who pays the freight, the amount of the allowance not being determined by the freight paid, and in view of further evidence that the terms used were differently understood by the parties, is insufficient to establish the allowance of any discount from the invoice price, or to show a meeting of minds upon that subject.

Id.—Construction of Contract—Uncertainty.—The contract cannot reasonably be construed as importing an allowance of a discount merely of seventy-four cents, or an allowance of seventy-four per cent of the invoice price; nor can any qualifying words, such as "per cental," or "per carload," or "per gross," be deemed inserted therein. If the phrase used has no ascertainable meaning, and if it was in fact differently understood by the parties, there was no agreement for any rebate.

Id.—Quantum Valebat—Contract Price—Inferior Goods.—If there is no meeting of minds upon the terms of a contract for the sale of merchandise, a purchaser who has received and sold the goods is liable on *quantum valebat*; and where the evidence showed that the goods delivered were worth the contract price, without any allowance for freight charges, except as to certain inferior goods for which an allowance of damages was made, a judgment for the amount so ascertained will be affirmed.

Id.—Dispute as to "Freight Allowance"—Notice to Purchaser.—A purchaser claiming a freight allowance of seventy-five cents per hundred pounds upon the invoice price, when informed that such claim was disputed by the seller, under the claim that no allowance from the invoice price was intended, could not thereafter claim a freight allowance upon further receipts of merchandise.

Id.—Conditional Agreement to Sell in Future.—An agreement to sell and deliver additional merchandise in the future, upon the same terms and prices as in a present sale, conditional upon the seller having the additional merchandise to sell at the future time agreed, does not import an obligation to sell, where the proposed purchaser does not show that the condition upon which the sale and delivery was to be made existed. Where the contrary appears, and the terms of the sale were never really agreed upon, no claims can be allowed in favor of the purchaser for breach of the conditional agreement to sell in future.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Walter Van Dyke, Judge.

The facts are stated in the opinion of the court.

McKinley & Graff, for Appellant.

E. M. Gibson, Welles Whitmore, and F. M. Porter, for Respondent.

TEMPLE, J.—Both parties to this case are corporations. Plaintiff alleges a sale of merchandise to defendant of the agreed value of $4,862.62, admits a payment of $1,972.81, leaving a balance of $2,889.81, for which the suit was brought.

Defendant denies that it purchased goods of the value charged in the complaint, but avers that it purchased, or contracted to purchase from plaintiff, fifteen hundred gross of Mason jars, and seventy-six gross of extra caps, of the total value of $7,640.12, and that as part of the contract of sale plaintiff agreed to a rebate of seventy-four cents per hundred pounds, as an allowance upon the freight charges to be paid thereon.

Defendant admits that plaintiff delivered nine hundred and forty-six gross of jars and seventy-six gross of caps, worth $4,852.62, and alleges that upon these goods defendant paid $1,525.14 freight, which plaintiff agreed to pay. Also that one hundred and sixty-seven gross of jars delivered were defective, and were worth one dollar per gross less than the agreed price. Also that plaintiff failed to deliver five hundred and fifty-four gross of jars, which failure obliged defendant to purchase in the market one hundred and sixty-four gross at an increased price, to its damage in the sum of $600.49. Defendant demands judgment against plaintiff in the sum of $1,425.57.

The parties agreed as to the issues submitted to the trial court. They were: 1. Was defendant entitled to a rebate as freight allowance, and, if so, how much? 2. Is defendant entitled to damages for the failure of plaintiff to deliver all the goods it had contracted to deliver, and, if so, the amount of the damage? and 3. Was defendant entitled to recover damage for one hundred and sixty-seven defective jars?

There is no controversy as to the invoice price, nor as to the quantity of goods delivered. The main controversy relates to the rebate and to the number of jars plaintiff was bound to deliver.

The negotiations were by letter, as follows: December 26, 1894, plaintiff, a manufacturer of glassware at Converse, Indiana, addressed a letter to defendant, a dealer in crockery and tinware, at Los Angeles, soliciting orders for Mason fruit jars.

January 11, 1895, defendant replied, asking a description of ware and terms, closing its letter thus: "State terms, freight allowance, etc., and oblige." On the 18th plaintiff replied, describing goods and packages, and then as follows: "Freight allowance to Los Angeles from Converse is seventy-four cents. We would be pleased to sell you five to ten carloads as follows: Pints, complete, $4.00; quarts, $4.25; half gallon, $6.00; F. O. B. factory, Converse. Packed in regular packing, regular terms; if packed one dozen in a box, twenty-five cents per gross extra. Extra caps, $1.75; or we would sell bodies only, pints, $2.25; quarts, $2.50; half gallon, $4.25; in regular packing; special packing, twenty-five cents per gross extra. This for early acceptance and shipment not later than June 1st. Our terms are sixty days from date of shipment, or two per cent off for cash in ten days. We hope these prices and terms will be sufficiently attractive to secure your order. We would be very much pleased to make consignment of jars to your place. Very truly."

On the 28th of that month defendant sent its order for jars and caps, with some directions as to shipment, and the following inquiry: "Please state also, by return of mail, if you will give us the refusal of an additional five carloads at present prices and terms, provided we place our definite order for the same before May 1, 1895. We are not in position at this writing to safely judge as to our fuller wants for the coming season which ordinarily run from twelve to twenty carloads, but will be able to do so intelligently by May first, and probably sooner. Respectfully."

February 5th plaintiff replied, accepting order, and to the special inquiry as follows:

"We have, so far, declined to give any option or refusal as to future sale, as we look for better prices. We have decided in

your case to sell you another five hundred gross upon same terms. and prices if notified on or before May first, conditional, if we have the ware to sell at that time.

"Yours very truly,

"THE PEERLESS GLASS CO.,

"J. A. GAUNTT, President."

February 28th the first carload was shipped to defendant, with the following invoice:

"Converse, Ind., Feb. 18, 1895.

Pacific Crockery & Tinware Co., Los Angeles, Cal., bought of

THE PEERLESS STAMPING AND GLASS CO.

(Incorporated.)

Fruit Jars and all Kinds of Glass Vessels.

Plant—Converse, Ind.

Office—Marion, Ind.

Terms—Sixty days; two per cent off ten days.

Terms—Cash.

Feb. 18th.

| | | |
|---|---|---|
| To 9 gross pint Mason's, 1 doz. in a box.......$ 4.25 | | $ 38.25 |
| To 10 gross pint Mason's, 6 doz. in a box...... | 4.00 | 40.00 |
| To 30 gross quart Mason's, 1 doz. in a box.... | 4.50 | 135.00 |
| To 16 gross quart Mason's, 8 doz. in a box..... | 4.25 | 68.00 |
| To 20 gross ½ gal. Mason's, 1 doz. in a box.... | 6.25 | 125.00 |
| To 10 gross ½ gal. Mason's, 6 doz. in a box.... | 6.00 | 60.00 |
| To 10 gross caps and rubbers................ | 1.75 | 17.50 |

$483.75

F. O. B. Converse, Indiana."

Other shipments were made as follows: March 5th, March 20th, April 29th, and May 2d. With each an invoice was sent similar to that above set out. All were F. O. B. Converse, which means delivered on the cars at Converse without expense to the buyer. In none was there any mention of freight allowance, or any discount, except the statement "two per cent off ten days," which was part of the heading of each invoice. Heimann testified that he conducted the correspondence for the defendant, that the invoices were all received by defendant about ten days after their date, that the defendant rendered no statement to

plaintiff, and did not mention or refer to the subject of freight allowance, until its letter of May 29, 1895.

Defendant never paid the amount of any bill, but made remittances on account, without explanation.

May 9, 1895, plaintiff drew upon defendant for the full balance due on goods, according to invoice price, making no rebate. Heimann testified that the order was presented, "but the company did not pay the same, but allowed the draft to go to protest. The Pacific Crockery Company never wrote to the Peerless Glass Company in regard to said protested draft, and in no way ever mentioned it to plaintiff or made any explanation why it was not paid, or why it was allowed to go to protest."

This draft must have made it clear to defendant—if before it had been doubtful—that plaintiff did not understand that there was any discount on the goods. Still, it continued to insist upon the shipment of more goods. Plaintiff had notified defendant that it could not furnish the additional five hundred gross, claiming that its acceptance was conditional upon its having the goods, and it did not have them. Even after this positive knowledge that plaintiff did not expect to make a discount, defendant strenuously insisted upon its right to the "option," as it terms this part of the contract, and finally, on the 27th of May, sent the following dispatch to plaintiff:

"Los Angeles, May 27, 1895.

"To the Peerless Glass Co., Converse, Indiana.

"To end controversy about option will you ship quick one more car as specified, April 22nd, at former terms, and fifty-four gross due on original contract, the latter in cases?"

The next day defendant received a telegram accepting the offer, and then on the following day wrote a letter to plaintiff, for the first time explaining its construction of the contract.

The letter of the 29th clearly shows that defendant supposed all the goods would be shipped before the letter would arrive, but apparently they were not, and plaintiff then refused to ship more until those already sent were paid for. Hence the proposed compromise fell through, and plaintiff failed to deliver fifty-four gross of the jars included in the first order.

Defendant proved by many witnesses that the term "freight allowance" was a term well understood by merchants who buy

goods in the east, and when goods are delivered F. O. B. the purchaser pays the freight and deducts the amount of the allowance from the invoice price. The allowance has nothing to do with the freight actually paid. It may be greater or less. In other words, it is a discount sometimes made by merchants to induce dealers at a distance to trade with them.

Plaintiff claims to have understood that defendant was inquiring for the freight rates from Converse. If so, the inquiry naturally is, why its agents did not give the freight rates instead of using the phrase "freight allowance"—a phrase never used to convey such meaning. If this were all, the case would be easily resolved against plaintiff, so far as concerns goods delivered before the order and letter of May 9th are concerned. At that time defendant well knew how plaintiff understood the contract, and further receipts of merchandise would be without freight allowance. From that time the managers of the defendant were not acting in good faith, but were lying in wait for plaintiff, intending to spring the point they thought they had when they got all the goods they could. And such was the course they pursued.

But what is the natural meaning of the sentence, "The freight allowance to Los Angeles from Converse is seventy-four cents?" The form of the expression is inapt as applied to a rebate, and quite appropriate as applied to a charge for freight. It is true, on the other hand, that the word "allowance" by itself does suggest an idea the opposite of a charge. But if an allowance or a rebate was meant, what is the amount of the rebate?

Defendant's managers say the allowance is seventy-four cents per hundred pounds. The only reason for this conclusion that I can see is, that it is very near the freight rate. Plaintiff contends that this fact shows that freight rate is what was meant—especially as in the same letter defendant was told upon what terms it could have a discount. Taken literally, it means a rebate of seventy-four cents upon the whole purchase; as merchants would probably understand the phrase, it would mean seventy-four per cent upon the invoice price. Neither interpretation is admissible, for each is unreasonable. But we are not at liberty to interpolate in the letter the words "per cental," or their equivalents. That is certainly an unusual mode of de-

termining a discount. It may as well have meant per carload, per shipment, or per gross. The contract of purchase was not by weight, but per gross. If the phrase had no ascertainable meaning, and it was in fact differently understood by the parties, it must be a case in which there was no agreement, which in this case means that no rebate was allowed. If there was no meeting of the minds of the parties, since defendant has received and sold the goods it would be liable on *quantum valebat*, which the evidence shows would be the contract price. Defendant was allowed the damage for inferior goods.

The sale of the additional five hundred gross was conditional, and the defendant did not show that the condition upon which plaintiff agreed to deliver them existed. The contrary was shown without conflict. The fact that the terms of the sale were never really agreed upon would be a sufficient answer to this claim on the part of the defendant.

The judgment and order are affirmed.

Henshaw, J., and McFarland, J., concurred.