[No. 13810.   Department One.   June 15, 1917.]

SERALPHA A. BUCK, *Respondent*, v. EQUITABLE LIFE
ASSURANCE SOCIETY OF THE UNITED STATES,
*Appellant*.[1]

INSURANCE—POLICY — MUTUALITY — MISTAKE. Where an application for a $1,000 life insurance policy and the premium paid called for a cash surrender value of $408 at the end of fifteen years, which by mistake of a clerk was written $1,000, and four years later, on discovery of the mistake, the company notified the holder of the error and offered to correct it and that but $408 would be recognized, the contract lacked mutuality and the policy could not be enforced according to its terms after the end of fifteen years.

SAME—POLICY—MISTAKE—NOTICE OF MISTAKE—ESTOPPEL. In such a case, where the company wrote the holder, recognizing $408 as the guaranteed cash reserve value if continued in force for fifteen years, and the assured made no reply, the company was under no obligation to seek reformation of the policy, and the assured is estopped by his silence to dispute the mistake.

CONTRACTS—MISTAKE—RELIEF. The courts will grant relief from a unilateral mistake in a contract, clearly proved, when it would be harsh to enforce it.

[1]Reported in 165 Pac. 878.

LIMITATION OF ACTIONS—APPLICATION—DEFENSES. The statute of limitations as to actions does not bar defenses against a party who was not seeking any affirmative relief during the lapse of time.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered June 5, 1916, upon findings in favor of the plaintiff, in an action upon a life insurance policy, tried to the court. Reversed.

*Kerr & McCord*, for appellant.

*Cooley, Horan & Mulvihill*, for respondent.

MORRIS, J.—On January 8, 1901, appellant issued to respondent a life insurance policy in the sum of $1,000, containing the following option:

"If the assured be living and this policy is in force on the · twenty-second day of December, 1915, the said assured or assigns, may surrender the policy to the society and draw the guaranteed cash value of $1,000 together with the cash dividend then apportioned, consisting of the policy's full share of the surplus profits as determined by the actuaries of the society."

It was further provided in the policy that it should be indisputable after one year from its issue, providing all premiums were duly paid. Upon the expiration of the fifteen year period provided for in the option, respondent gave notice of his election to surrender the policy and withdraw $1,000 as the guaranteed cash surrender value thereof, together with the cash dividends then apportioned to the policy in the sum of $161.07. ⌐The appellant, in its answer, set up affirmatively that the sum of $1,000, included in the option as the cash surrender value of the policy, was inserted therein by mistake of a clerk in its office at the time the policy was issued, and that the correct amount should be the sum of $408.⌐ Reformation of the policy was asked for in this respect. The lower court found in favor of the respondent.

On behalf of the appellant, it was shown that the blanks in the printed form of policy were filled out by an employee who

had been in its service at that time but one day. His duty was to prepare policies for execution by the officers of the company and to fill in the blanks from the document furnished him, known as the "application heading," which showed the kind of policy, the face amount thereof, the amount of the cash reserve and other details. The application heading furnished the clerk in this instance was as follows:

No. 1016922
Premium Dividend 15 Yrs. C. C. 408.✓
Agency Seattle                    1st pay't. Reg. date Dec. 22, 1900
Form No. 22700-2 Made out Amt. 1,000
Age 53.  Kind P. D. Life  Dec. 22, 1915   A. 56.64

The policy issued herein complies with the application heading with the exception of the amount of the cash reserve, the correct amount of the cash reserve being indicated on the application heading by the symbols "C. R. 408," which amount should have been inserted in the option instead of $1,000. There is no question but that the insertion of the sum of $1,000 instead of $408 as the cash reserve value of this policy was a clerical error. It is also undisputed that policy holders at the age of respondent must pay an annual premium of $86.59, not only upon policies in the appellant company, but in all life insurance companies, in order to receive a cash surrender of $1,000 at the end of fifteen years. It is also undisputed that the payment of an annual premium of $56.64, the amount paid by the respondent, by a policy holder of his age would in no life insurance company entitle the policy holder to recover at the end of fifteen years a cash reserve value of more than $408. It appears from the testimony of respondent that he was surprised when he received this policy, though he contends it is the policy the soliciting agent told him would be written. He seems to have known enough about life insurance to appreciate this unusual feature of his policy. He told other agents about it, and when they expressed doubts as to a man of his age having a policy with a fifteen-year cash reserve value of $1,000, he made a wager with them and exhibited the policy. He commented upon the

unusual feature of the policy to some representative of appellant at its Seattle office, which was the first intimation appellant had of the mistake in the option. The Seattle office reported the condition of the policy to the home office, and the home office, on September 22, 1904, wrote the following letter:

"September 22, 1904.

"S. A. Buck, Esq., Monroe, Wash.

"Dear Sir: Information has come to the society to the effect that policy No. 1016922, issued by the society on your life in December, 1900, is not in accordance with the terms of your application therefor; that is to say, it is alleged that the guaranteed cash value of your policy, at the end of its accumulation period in 1915, is written in Option 1, on the third page of the policy contract as $1,000 when the amount should be $408. You are hereby notified, therefore, that if policy No. 1016922 is continued in force hereafter by the payment of further premiums, the amount which the society will pay as the guaranteed cash value of the contract at the end of the period is $408.

"We would state further that if the change from $408 to $1,000 was made after policy No. 1016922 left this office the society is not bound thereby. If you will return this policy No. 1016922 to this office for inspection we shall be glad to look it over, and, if it is found to be incorrect, to re-issue it in accordance with the terms of your application.

"Yours very truly,

"S. S. McCurdy, Assistant Registrar."

Respondent received this letter in due course of mail, but made no reply thereto other than he says he told some one in the Seattle office on the occasion of a subsequent visit that it was not his mistake and he intended to enforce the policy as it was written, unless the company would refund him his money with interest. Under these circumstances we do not think the lower court was justified in holding the policy as written represented the true contract between the parties. The policy as written lacked mutuality, a necessary ingredient to all contracts. Respondent, it is clear, knew of the mistake and, with the knowledge of the error, retained his policy and re-

fused to submit it for correction.ⱼ Knowing of the error and refusing its correction, he cannot now take advantage of it. *Gray v. Supreme Lodge, Knights of Honor,* 118 Ind. 293, 20 N. E. 833 ; *Doll v. Prudential Insurance Co.,* 21 Pa. Sup. Ct. 434. Respondent's application and the premiums he paid called for a policy with a cash surrender value of not to exceed $408. That was the contract he made and the cash reserve, and the only cash reserve he paid for. He should be content with his bargain and not seek to take advantage of an obvious mistake.

It is suggested that, when it realized that a mistake had been made in the cash reserve valuation, appellant should have taken some steps looking to a reformation of the policy. Appellant had indicated in its letter to respondent its purpose to recognize $408 as the guaranteed cash reserve value of this policy if continued in force for the fifteen-year period. It could not surrender the policy or cancel it, because there could not be any change if respondent should die before the expiration of the fifteen-year period nor after that period, unless respondent elected to exercise the option he only could exercise.

The provision in the policy that it should be indisputable after one year as to the amount due avails naught to respondent. The appellant is not attempting to dispute the policy nor prevent a recovery thereon. It is simply contesting as to the amount due thereon. "The amount due," in the language of this clause, can mean no other sum than the amount due in law and fact. Appellant is seeking not to avoid the payment of this amount, but to have the policy truthfully express the amount correctly due. The vice of respondent's contention that the amount written in the policy is incontestable after one year is shown by a simple illustration. Suppose that, instead of writing the amount correctly as $408.00, the decimal point had been omitted and the amount read $40800. No one would have the hardihood to contend that, in case of nondiscovery of the mistake until after

the lapse of one year, appellant would be bound to pay such sum to respondent, and was forever barred, both in law and fact, from contesting the amount shown to be due on the face of the policy.

Respondent argues that, if there was a mistake, it was not mutual, but only on the part of appellant, and that the evidence lacks that clearness that must be shown before either party can take advantage of the mistake. This case falls within all rules in which litigants have been granted relief from contractual errors. So far as we know, it has always been the law that, where there is certainty of error, appropriate relief will be granted. Courts are always open to receive and enforce equitable considerations; and even in cases of unilateral mistakes, it has been held that the contract would not be enforced when it would be harsh to do so. 36 Cyc. 606; 6 R. C. L. 623.

Respondent knew that the company regarded his policy as written enforcible only to the extent of its straight life feature, and that if continued as to its guaranteed cash value, in case he survived the fifteen-year period, it would refuse to pay him more than $408. If this was not satisfactory to respondent and if he was not willing to keep his policy under this condition, he should have replied to the letter written him. Good faith would at least demand that much. Not to do so would lead the company to believe that he acquiesced in its intent as expressed in its letter of September 22. These facts support appellant's plea of estoppel. When duty calls for speech, silence will work an estoppel when such silence operates a fraud upon the other party. It was a fraud upon appellant when respondent, by his silence, encouraged the belief that the policy would be satisfied by the payment of $408 at the end of the fifteen-year period, in order to prevent them from taking some action looking to the reformation of the policy in this respect, while respondent intended to thus mislead it and enforce the policy as written when the time arrived.

Neither does any general statute of limitation defeat appellant's defense. So long as respondent had a cause of action upon his policy, so long could appellant assert any defense thereon which would excuse it from subjecting itself to respondent's demand. Statutes of limitation bar actions, and not defenses to actions. Appellant was not seeking any affirmative relief against respondent. It was seeking only to defend against an unjust claim.

The judgment is reversed, and the cause is remanded with instructions to enter a judgment for plaintiff in the sum of $569.07, which sum is the aggregate of the cash surrender value of this policy and $161.07, cash dividend apportioned to the policy.

ELLIS, C. J., CHADWICK, MAIN, and WEBSTER, JJ., concur.