### RICHARDSON v. TRAVELERS INS. CO.

### No. 11917.

United States Court of Appeals
Ninth Circuit.

Dec. 13, 1948.

Rehearing Denied Jan. 17, 1949.

Alvin Gerlack, of San Francisco, Cal., for appellant.

Joseph T. O'Connor and Harold H. Cohn, both of San Francisco, Cal., for appellee.

Before HEALY, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

In 1926 appellant, then and now living in the state of California, made application to appellee for a policy of life insurance in the amount of $10,000 on a so-called "Uniform Premium Plan." Through an alleged mistake of its officers and scriveners at its home office in Hartford, Connecticut, appellee issued appellant a $10,-000 policy known as a "Pension Policy, age 65." The one difference between the policy alleged to have been applied for and the one issued is that under the latter the insured is entitled upon maturity to receive benefits in twice the amount afforded by the former. The premium inscribed on the issued contract, which was paid by appellant throughout the life of the policy, was somewhat over one-half the premium appellee normally requires for its "Pension Policy, age 65."

Although the policy was in the hands of the insurance company for loan purposes on

---

several occasions after its issuance, the alleged error was not discovered because the company's loan division has no connection with its policy writing division. In March of 1946 appellee first became aware of the alleged mistake and sought appellant's consent to a substitution of the policy applied for in place of the one issued. Upon appellant's refusal to agree to the substitution, appellee brought this action for reformation of the insurance contract. Appellant specifically denied the existence of a mistake, contending that the policy issued reflected the agreement of the parties. Thus a real and substantial contest was tendered by the pleadings and developed by the evidence. The trial court ordered the policy to be reformed, relying on cases supporting its finding that a suit for reformation of an insurance policy is not a contest of the policy. We consider those cases later in this opinion.

Several issues have been raised in the briefs and argument, but in our view of the case the important question is the construction that should be placed on the incontestable clause contained in the policy issued. The clause reads: "This contract shall be incontestable after one year from date of issue, except for non-payment of premiums."

The leading case dealing with a similar incontestable clause is Columbian National Life Insurance Co. v. Black, 10 Cir., 35 F.2d 571, 577, 71 A.L.R. 128. The court in that case held that a suit for reformation "is not a contest of the policy, but a prayer to make a written instrument speak the real agreement of the parties." For that reason the correction of a mutual mistake was said to be excepted from the coverage of the incontestable clause. In accord with this principle are Buck v. Equitable Life Assurance Society of United States, 96 Wash. 683, 165 P. 878; Equitable Life Assurance Society of United States v. Rothstein, 122 N.J.Eq. 606, 195 A. 723; and Mates v. Pennsylvania Mutual Life Insurance Co., 316 Mass. 303, 55 N.E.2d 770. There appear to be no California decisions one way or the other on the precise point. However, the Equitable Life Assurance Society of United States v. Rothstein, and Mates

v. Pennsylvania Mutual Life Insurance Co., do no more than repeat what was said in Columbian National Life Insurance Co. v. Black, supra.

The reasoning of the court in the Black case makes one of two assumptions. Either the incontestable clause is taken to refer to the terms of the alleged true agreement rather than the terms embodied in the executed policy, or the insurance policy itself is deemed to consist not of the terms in the document issued by the insurer to the insured, but rather of the alleged actual understanding between the parties. If either of these propositions is sound, it follows that a suit to reform a document setting forth the terms of an insurance contract is not a contest of the contract itself. However, we are not persuaded that these assumptions are supported by reason or law.

The wording of the incontestable clause is unambiguous. It states, "this contract shall be incontestable * * *." It seems that the phrase "this contract" patently applies to the printed provisions appearing on the document of insurance of which that clause is a part. It is not a reference to the oral conversations and negotiations preliminary to the execution of the written instrument, but rather to the formal writing itself. The clause does not say that the insurer shall not contest his liability under the actual agreement; it says *this contract* shall be incontestable. The provisions setting forth optional payments upon maturity of the policy are integral parts of the written contract, and are included in the reference, "this contract shall be incontestable * * *." It seems logical to assume that an action to reform portions of a document involves contesting their validity.

It is true that mutual mistake in the execution of a contract may be such as to render the contract entirely void from the outset. In such a case the mistake is the kind which prevents mutuality of assent, so that in realty there is no agreement binding upon the parties. Peerless Glass Co. v. Pacific Crockery & Tinware Co., 121 Cal. 641, 54 P. 101; Williston on Contracts, § 95. It is manifest that this case presents no such basic mistake. No mistake existed as to the subject matter of the contract,

and through delivery and acceptance of and performance under the formal policy there was a continuing expression of assent to be bound in accordance with its provisions. Furthermore, were the instrument void for want of mutuality, no action for reformation could be maintained. Ainsworth v. Morrill, 31 Cal.App. 509, 160 P. 1089. Assuming that the mistaken provision, in the absence of an incontestable clause, could be reformed, nevertheless, it along with the remainder of the provisions constituted a contract which bound the parties until rescinded, reformed or otherwise modified. See, Berenson v. French, 262 Mass. 247, 159 N.E. 909; Williston on Contracts, § 15. For this reason it cannot properly be assumed that the document embodying the policy is invalid, and therefore argued that the incontestable clause has no effect on an action to reform the policy. It thus appears that throughout the 20 years after its execution the written policy had the full effect of a valid contract, and that it was this contract to which the incontestable clause refers.

We believe this conclusion is supported by a consideration of the purposes for which incontestable clauses have been inserted in life insurance policies. It is generally agreed that the origin of the clause may be found in the competitive idea of offering to policyholders assurance that their dependents would be the recipients of a protective fund rather than a lawsuit. Wright v. Mutual Benefit Life Ass'n, 118 N.Y. 237, 23 N.E. 186, 6 L.R.A. 731, 16 Am. St.Rep. 749; Clement v. New York Life Ins. Co., 101 Tenn. 22, 46 S.W. 561, 42 L.R.A. 247, 70 Am.St.Rep. 650; Vance on Insurance, § 231. Too often had an insurer obtained a judicial determination upon maturity of a policy that the insured had made an inaccurate statement in his application, or was guilty of fraud which resulted in the avoidance of liability under the policy. Massachusetts Benefit Ass'n v. Robinson, 104 Ga. 256, 30 S.E. 918, 42 L.R.A. 261. The clause remedied this situation by rendering the insurer's promise to perform in accordance with the statements and terms in the policy absolute upon the passing of a specified time, expressly subject only to the non-payment of premiums. Many states have evidenced their favor toward the incontestable clause by enacting legislation requiring it in life insurance policies. See, for example, Ala.Code 1928, § 8365, Code 1940, Tit. 28, § 7; Rev.Stat.Kan.1923, § 40—382, G.S.1935, 40-605; Gen.Laws (Ter. Ed.) Mass. c. 175, § 132; N.Y.Insurance Law, McK.Consol.Laws, c. 28, §§ 155, 163.

Logically the coverage of this clause should extend to those defenses of the insurer which could be conceivably raised within the contractual period of contestability. Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 169 N.E. 642. These inception defenses would include misrepresentation, fraud, breach of condition or warranty, mistake and lack of insurable interest. Public policy unfavorable to wagering contracts disallows a contractual waiver of the defense of lack of insurable interest after a shortened statute of limitations, (Dakota Life Ins. Co. v. Midland Nat. Bk., 8 Cir., 18 F.2d 903, reversed on other grounds 277 U.S. 346, 48 S.Ct. 532, 72 L.Ed. 911) but the other inception defenses, without exception, are the very objects for which the incontestable clause was originated. See, Note, 24 Calif.Law Rev., 722; also, see, note in 30 Col.Law Rev. 573, for comment on the Black case. If this seems harsh, it must be remembered that the insurer himself agreed not to raise these defenses as an inducement to prospective policyholders.

In Dibble v. Reliance Life Ins. Co., 170 Cal. 199, 149 P. 171, Ann.Cas.1917E, 34, the Supreme Court of California applied the incontestable clause in a suit for cancellation on the allegation of fraudulent representations by the insured. As above pointed out, fraud, like mistake, is an inception defense, and falls naturally into the category of objections that should be raised within the one year period of the clause. The court in the Dibble case indicated approval of a broad application of the incontestable clause, adopting as part of its opinion, 170 Cal. on page 204, 149 P. on page 173 the words of the lower court, "it [incontestable clause] is valid as against all defenses not excepted from its operation." If a suit for reformation were held not to

involve a contest of the provisions to be reformed, the insured would be deprived of the very confidence which the incontestable clause was meant to instill as to the face value of life insurance policies. This purpose fortifies the construction we have given the clause, and operates to preclude an attack upon the terms of the executed policy through an action for reformation.

We have had less difficulty in arriving at this result because of the well-settled rule that the defense of fraud is barred by the incontestable clause contained in an insurance policy. It does not seem reasonable to bar the raising of fraud as a defense and at the same time allow the insurer to gain reformation for its own benefit on the ground of an alleged mistake of its own skilled employees.

Reversed.

BONE, Circuit Judge (dissenting).

I would affirm the judgment of the lower Court.