The **MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**Herman SIMON, Defendant.**

United States District Court
S. D. New York.
May 10, 1957.

See also, 15 F.R.D. 336.

Haughton Bell, New York City, for plaintiff, J. G. Kelly, C. F. Hollander, New York City, of counsel.

Leon Wasserman, New York City, for defendant.

DAWSON, District Judge.

This action is brought by the Mutual Life Insurance Company of New York (hereinafter referred to as Mutual) to reform a policy issued to Herman Simon in 1944. Reformation is sought on the ground that as a result of a scrivener's error the policy recites $57,098.26 instead of $5,798.26 as the "Single Sum" payable when the insured becomes 65 years old and his rights to the endowment annuity mature.

There is no dispute as to the material facts. On December 7, 1944, Herman Simon, residing in Los Angeles, California, submitted an insurance application to Mutual through a local agent in Los Angeles. The application recites the coverage sought as "5,000 endowment annuity at age 65." Pursuant to this ap-

plication a policy dated December 13, 1944 was issued. The terms of coverage appear on the first page and read as reproduced below:

"The Mutual Life

Insurance Company of New York

Will Pay

*The Insured* ................. Herman Simon ................. at the end of the endowment period, which is the policy anniversary nearest the Insured's 65th birthday, a

*Life Income* of ......... Thirty Three and 34/100 ........Dollars each month, with ten years certain, or, if elected on or before the end of the endowment period, a

*Single Sum* of ... Fifty Seven Thousand Ninety Eight and 26/100 ... Dollars or will pay the beneficiary upon receipt at the Home Office of the Company in the City of New York of due proof that the Insured died before the end of the endowment period, the

*Face Amount* of ........... Five Thousand One ........... Dollars or the cash value at the Insured's death, if such case value, exclusive of dividends, is greater than the face amount. Payment is subject in any case to the exceptions under the provisions on page 5 regarding war, aviation, and suicide, and to the other provisions of this Policy."

After the recitation of coverage, the premium section appears. By its terms a premium of $100.05 was payable every December and June. At the bottom of the page appears a legend in red type: "Read Your Policy Carefully." On page four, under the heading "Miscellaneous Provisions" appears the following term of the policy:

"The Contract—This Policy has been issued in consideration of the application and of the payment of the premiums provided for on page 1. This Policy and the application, copy of which is attached, constitute the entire contract."

The scrivener's error asserted by Mutual consists of the number spelled out in the policy opposite the printed phrase "Single Sum." As the policy now reads, the insured upon reaching 65 can elect to receive either $57,098.26 in cash or a ten year certain annuity of $33.34 a month. The disparity between these choices is easy to appreciate. The annuity aggregates just $400 a year, while the principal of $57,000 at 3% yields $1,700 a year. Thus the "Single Sum," Mutual contends, should read $5,798.26 instead of $57,098.26. The insertion of the latter figure is explained as a typographical error committed when the policy was typed. The testimony offered at trial established that Simon's application for a $5,000 endowment annuity was approved when received by Mutual in New York. A clerk in the policy department then compiled a data sheet, Plaintiff's Exhibit 1, indicating the coverage and premium. As it appears on the data sheet, the Single Sum is $5,798.26. The evidence establishes that it is the correct sum for the indicated premium.

As a matter of routine, the completed data sheet was dispatched to the typing department. There the information on the data sheet was typed into the appropriate blanks on a policy form. The form was then submitted to a checker who compares the policy with the data sheet. Apparently the error was made in the typing department and not detected by the policy checker. The typist appeared at the trial and admitted that the error was made by her. Thereafter the policy was delivered to the insured in California. There is no evidence that anyone detected the error before 1952. This is so even though changes were made in 1948 through the agency in Jacksonville, Florida, which at these

times had temporary custody of the policy. Two riders evidencing these changes were attached to the policy. One, dated April 27, 1948, is headed "Automatic Premium Loan"; the other, dated March 9, 1948, is titled "Designation of Beneficiary, Settlement Options, and Rights." Neither rider refers to the principal amount claimable under the endowment annuity. In April 1952 Mutual's agent in Jacksonville detected the discrepancy in the amounts appearing on the face of the policy. He notified the home office which investigated and concluded that an error had been made. The insured was approached but refused to consent to a modification of his policy.

On the basis of the testimony and exhibits introduced at trial the Court makes the following findings of fact:

(1) A scrivener's error was committed in the typing of the policy in that the figure $57,098.26 was inserted before the words "Single Sum." The amount which should have been inserted in this space is $5,798.26.

(2) The scrivener's error constituted a mutual mistake in that neither party when the contract was made intended or knew that the policy called for the payment of a "Single Sum" of $57,098.26. Both parties intended that this amount be about $5,798.26.

(3) The scrivener's error was not prejudicial to the insured in that prior to its discovery he did not change his position or rely upon the mistaken figure in the belief that it was correct.

The insured does not dispute that the face amount payable should read $5,798.-26, the sum asserted by Mutual. Nevertheless, in opposition to this action for reformation there are raised four defenses: (1) the error resulted from the unilateral negligence of Mutual; (2) Mutual is guilty of laches in failing to detect the error within eight years; (3) the policy as issued was a counter offer by Mutual which the insured accepted; and (4) the clause of the policy rendering it incontestable after two years now bars reformation.

Before proceeding to the merits, it is proper to articulate the controlling principles of conflict of laws here applicable. As the jurisdiction of this Court rests upon diversity of citizenship, and as the action was initiated here, the proper rule of conflicts is that which would be applied by a court of the State of New York. Abandoning unitary formulas such as "the place of contracting" or "the place of performance," the New York Court of Appeals has adopted the "grouping of contacts" theory. Auten v. Auten, 1954, 308 N.Y. 155, 124 N.E. 2d 99, 101. This approach requires the application of "the policy of the jurisdiction 'most intimately concerned with the outcome of [the] particular litigation'." 308 N.Y. 161, 124 N.E.2d 102. At the same time this doctrine "enables the court, not only to reflect the relative interests of the several jurisdictions involved * * * but also to give effect to the probable intention of the parties and consideration to 'whether one rule or the other produces the best practical result.'" Ibid. Evaluating the significant contact points leads to the conclusion that the law of California controls the rights and obligations of the parties to the contract. This result follows from the fact that the insured applied for and received the policy in California, where he resided; in addition, his dealings with Mutual were through a local agent.

Proceeding to the merits, the Court will apply the law of California in passing upon the four defenses urged to defeat this action for reformation.

(1) *Negligence*

Rectification of a scrivener's error has long been recognized as a basis of reformation. See Flax v. Prudential Life Insurance Co., D.C.S.D.Cal.1957, 148 F.Supp. 720. In eliminating an error, the court does not rewrite an agreement but merely conforms it to the parties' mutual understanding as to the terms of their bargain at the time it was made. Lemoge Electric v. County of San Mateo, 1956, 46 Cal.2d 659, 297 P.2d 638. Acknowledging these principles, the insured, nevertheless, contends that ref-

ormation is here barred because the error resulted solely from the negligence of Mutual.

■ By statute, California has codified its law concerning reformation:

"§ 3399. *When contract may be revised* When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

"§ 3400. *Presumption as to intent of parties.* For the purpose of revising a contract, it must be presumed that all the parties thereto intended to make an equitable and conscientious agreement." Cal.Civil Code (Deering 1941), West's Ann. Civ.Code.

Recognizing that mistakes are usually the result of carelessness, the Supreme Court of California has declared that unilateral negligence does not prevent reformation:

"It is settled that * * * the negligent failure of a party to know or discover facts as to which both parties are under a mistake does not preclude recission or reformation because of the mistake." Van Meter v. Bent Construction Co., 1956, 46 Cal.2d 588, 297 P.2d 644, 647.

Furthermore the reformation of an instrument prepared exclusively by the plaintiff whose negligence caused the error has been sustained. See Jefferson v. Pietroroia, 1936, 5 Cal.2d 222, 54 P. 2d 7. Accordingly, the defense of negligence is overruled and the Court concludes that the obvious scrivener's error in the policy constitutes a mutual mistake whose reformation is sanctioned by the law of California. Gillanders v. Da Silva, 1931, 212 Cal. 626, 299 P. 722;

accord, Hosford v. Henry, 1951, 107 Cal. App.2d 765, 238 P.2d 91; Caviglia v. Jarvis, 1955, 135 Cal.App.2d 415, 287 P.2d 525.

(2) *Laches*

■ The second ground upon which reformation is resisted is that laches bars the action. The evidence clearly establishes that the error was discovered by Mutual eight years after the policy was issued. Thereafter suit was promptly instituted. During this eight year period, local agents twice affixed riders to the policy relating to designation of beneficiaries and premium loans.

Mere delay has been recognized as insufficient to bar reformation. Thus, when diligent efforts followed the detection of an error in an insurance policy, reformation has been granted even though the mistake was not uncovered for twenty years. See Columbian Nat. Life Ins. Co. v. Black, 10 Cir., 1929, 35 F.2d 571, 71 A.L.R. 128; Metropolitan Life Ins. Co. v. Oseas, 1941, 261 App. Div. 768, 27 N.Y.S.2d 65, affirmed 1942, 289 N.Y. 731, 46 N.E.2d 348. Furthermore, it is clear that the mere lapse of time without prejudice to the defendant defeats his assertion of laches. Austin v. Hallmark Oil Co., 1943, 21 Cal.2d 718, 134 P.2d 777, 787; Cahill v. Superior Court, 1904, 145 Cal. 42, 78 P. 467. As this action was commenced well within the period of the statute of limitations, defendant's assertion of undue delay lacks substance. Antonsen v. Pacific Container Co., 1941, 48 Cal.App.2d 535, 120 P.2d 148. The Court concludes that laches has not been established and that reformation is not barred. Krone v. Insurance Co. of North America, 1933, 218 Cal. 556, 24 P.2d 459.

(3) *Counteroffer*

■ As a third defense, the insured asserts that the policy as issued constituted a counteroffer by Mutual which was accepted by his retention of the policy thereby forming a contract between the parties. Reference is made to the application, containing the following

provision, submitted by the insured and upon which the policy issued:

> "It is agreed that upon acceptance and retention of a policy with plan, special benefits, premium, amount, beneficiary rights or income settlement other than applied for, this application shall be for such modified policy and for such number of policies as may be issued."

The rule is well settled that an offer containing an obvious mistake is not susceptible of acceptance. Restatement, Contracts, § 71(c) (1932). If the insured knew that the policy recited a "Single Sum" of $57,098.26, then the error was manifest to him and he could not avail himself of it; on the other hand, if the insured was unaware of the "Single Sum" appearing in the policy, then there was a mutual mistake as to that amount, thereby justifying reformation. Cf. Lemoge Electric v. County of San Mateo, 1956, 46 Cal.2d 659, 297 P.2d 638. See, also, 3 Corbin, Contracts, § 609 (1951).

### (4) *Incontestability*

The defense most strenuously asserted by the insured is that the incontestability clause bars reformation of the policy. This provision reads as follows:

> "Incontestability — This Policy shall be incontestable after it has been in force during the lifetime of the Insured for a period of two years from its date of issue, except for any non-payment of premiums and the provisions regarding war and aviation and any provision for Double Indemnity for death by accidental means and except as may otherwise be provided in any provision for Waiver of Premium in event of total and permanent disability. However, if the Insured's age has been misstated, any amount payable by the Company shall be such as the premium would have purchased at the correct age."

In litigation involving incontestability clauses of this type, reformation to correct a scrivener's error has generally been sustained.[1]

In the leading case of Columbian National Life Insurance Co. v. Black, 10 Cir., 1929, 35 F.2d 571, 71 A.L.R. 128, a policy was issued on an application for a $10,000 ordinary life policy. As issued, all the pages of the policy except the first were intended for use with a twenty year endowment policy. Accordingly, the straight life cash surrender value at the end of twenty years was listed as $3,040; the endowment provisions, however, permitted the policy to be surrendered at the end of twenty years in exchange for the face amount of $10,000. After paying the straight life premiums for twenty years, the insured elected to claim the endowment amount. The court permitted reformation holding that it was not precluded by the incontestable clause:

> "Without going at length into the purpose and history of the clause and without intimating that an actual contest may not be found under the cloak of reformation, we hold that an action to correct a purely clerical error in a policy issued, so that it will speak the truth as to the agreement of the parties, is not barred by the incontestable clause." Id., 35 F.2d at page 577.

In Equitable Life Assurance Society v. Cannon the disability provisions of a life insurance policy were erroneously stated as $1,000 a month instead of $100; reformation was permitted despite the incontestability clause. N.Y.L.J., July 26, 1939, p. 209, affirmed 1940, 284 N.Y. 640, 30 N.E.2d 492. See also Radway v. United Benefit Life Insurance Company, 1st Dept. 1956, 1 A.D.2d 1003, 151 N.Y. S.2d 764.

Acknowledging the general rule to be that reformation is permitted despite the existence of an incontestable clause,

---

1. Metropolitan Life Ins. Co. v. Henriksen, 1955, 6 Ill.App.2d 127, 126 N.E. 736; Prudential Ins. Co. of America v. Strickland, 6 Cir., 1951, 187 F.2d 67; Mates v. Penn Mut. Life Ins. Co., 1944, 316 Mass. 303, 55 N.E.2d 770; Freestone v. Prudential Life Ins. Co. of America, D.C.N.D.Iowa 1956, 139 F.Supp. 665.

defendant urges that the law of California is contrary. To substantiate this contention reliance is placed upon a decision of the United States Court of Appeals for the Ninth Circuit. Interpreting California law, the court held, 2–1, that an incontestable clause in an insurance policy bars reformation of a scrivener's mistake. Richardson v. Travelers Ins. Co., 1948, 171 F.2d 699.[2]

In Richardson the insured applied in 1926 for $10,000 life insurance on the "Uniform Premium Plan." The company erroneously issued a $10,000 "Pension Policy, Age 65" contract which upon maturity entitled the insured to receive twice the benefits afforded by a "Uniform Premium Plan" policy. Throughout the life of the policy the insured paid the premium stated in his application, which was approximately one-half of the proper premium for a "Pension Policy, Age 65" contract.

In reaching its conclusion the Ninth Circuit pointed to the background which provoked the evolution of incontestable clauses: "Too often had an insurer obtained a judicial determination upon maturity of a policy that the insured had made an inaccurate statement in his application, or was guilty of fraud which resulted in the avoidance of liability under the policy." Id., at page 701. The incontestable clause remedied this situation, the court noted, by rendering the insurer's obligation absolute after a specified period provided that premiums were continually paid:

"Logically the coverage of this clause should extend to those defenses of the insurer which could be conceivably raised within the contractual period of contestability. * * * These inception defenses would include misrepresentation, fraud, breach of condition or warranty, mistake and lack of insurable interest. * * * If this seems harsh, it must be remembered that the insurer himself agreed not to raise these defenses as an inducement to prospective policyholders." Id., at page 701.

To sustain the wide scope given to the clause, reference was made to the dictum appearing in a California decision that "it [incontestable clause] is valid as against all defenses not excepted from its operation." Dibble v. Reliance Life Ins. Co., 1915, 170 Cal. 199, 149 P. 171, 173. In Dibble, the Supreme Court of California had held that the incontestable clause barred the defense that the insured's fraud had induced the company to enter into the contract. In reaching this conclusion the Supreme Court of California observed that the clause had been designed to obviate this very defense, and noted that other courts had given it the same construction.

Subsequent to this interpretation of California law rendered by the United States Court of Appeals for the Ninth Circuit, the Supreme Court of California rendered a decision considering the effect of an incontestable clause in an action for reformation. In New York Life Ins. Co. v. Hollender, 1951, 38 Cal.2d 73, 237 P.2d 510, the company sought to reform a policy on the ground that it misstated the insured's age. The defendant, in his application in 1931, stated that he had been born in 1886 and that his age as of his nearest birthday was 45. A $5,000 life insurance policy was issued which also provided disability payments of $50 a month. The disability benefits were contingent upon the insured's total and permanent disability prior to the anniversary of the policy on which his age at nearest birthday was 60. The policy contained these further pertinent provisions:

"Age. If the age of the insured has been misstated, the amount payable hereunder shall be such as the

2. This decision apparently blazed a new path upon which none has since deigned to follow. See Annotation, 1949, 7 A.L.R. 2d 504. Law review discussion as well has been unfavorable. See 97 U.Pa.L. Rev. 741 (1949); 62 Harv.L.Rev. 890 (1949); 33 Minn.L.Rev. 784 (1949); 27 Texas L.Rev. 861 (1949). But see 47 Mich.L.Rev. 1023 (1949); 2 Vand.L.Rev. 707 (1949).

premium paid would have purchased at the correct age.

"The Contract. The Policy and the application therefor, copy of which is attached hereto, constitute the entire contract.

"Incontestability. This Policy shall be incontestable after two years from its date of issue except for non-payment of premium and except as to the provisions and conditions relating to Disability and Double Indemnity Benefits."

Becoming disabled on June 15, 1945, defendant filed proof of claim which led to an investigation establishing that he was then 61, having been born on April 27, 1884. The court held that the face value of the life insurance coverage should be reduced from $5,000 to $4,632, the amount which his premiums would have paid for if his correct age had been known when the policy was issued. The court further held that the company by establishing the correct age of the insured as over 60 thereby avoided liability for disability benefits.

The majority opinion gave the Richardson decision extended consideration. Citing the cogent criticisms appearing in the Harvard and Pennsylvania Law Reviews, the court declared that it was not necessary to decide whether Richardson had been correctly decided because it was clearly distinguishable. The court did pause to point out that while Richardson concerned a mistake made by the insurance company, the Ninth Circuit relied exclusively upon Dibble which concerned misstatements made by the insured. The Hollender majority distinguished Richardson as a case where reformation had been sought to vary the terms of the policy, while in the case at hand the company sought to enforce the terms of the policy in accordance with the age adjustment clause. Richardson was circumscribed as a decision holding that "in the *absence of any other pertinent contractual provision,* the incon-

testable clause bars the insurance company from setting up mistake as a ground for reformation after lapse of the contestable period. [38 Cal.2d 73, 237 P.2d 516]"

In Hollender the Supreme Court of California merely delineated the holding in Richardson without adopting it. For, to the extent that the Ninth Circuit's ruling deviated from the accepted rule, its decision appears to have been repudiated.[3] This conclusion was recently advanced by Chief Judge Yankwich in commenting on Richardson:

"* * * There, the federal court was interpreting a California policy, and, finding no California precedent, it held that the incontestability clause prevented reformation. The effect of this decision has been limited, if not entirely destroyed, by the decision of the Supreme Court of California in New York Life Ins. Co. v. Hollender, 1951, 38 Cal.2d 73, 237 P.2d 510, which must control us in interpreting California contractual law * * *." 148 F.Supp. 726, note 6.

In Hollender the insurance company succeeded in negating all liability for disability benefits. The insured's correct age was established not only to reduce the amount of life insurance as provided in the age adjustment clause but also to *void* the disability coverage. This result is in accordance with the language of Chief Judge Cardozo which the court had previously quoted from Metropolitan Life Ins. Co. v. Conway, 1930, 252 N.Y. 449, 452, 169 N.E. 642:

"[An incontestable clause] is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that *within the limits of the coverage,* the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken."

3. Thus the Supreme Court of California failed to follow the minority rule that age adjustments can be made only before

expiration of the incontestable period. See Vance, Insurance, § 97 at p. 587, note 45 (3rd Ed. 1951).

**416**

The amount of the policy and the risk assumed together measure the coverage of an insurance contract. Accordingly, as enunciated by the Supreme Court of California, it is apparently the law of California, as elsewhere, that an insurance contract containing an incontestable clause may be reformed to correct a scrivener's error. The Court so concludes. Therefore, as the evidence in this action justifies rectification of the typist's error in inscribing the "Single Sum" of the endowment, reformation is hereby decreed.

The Court directs that policy No. 5,952,110 issued December 13, 1944 by the Mutual Life Insurance Company of New York to Herman Simon be reformed to read in an amount of a "Single Sum" of $5,798.26. This opinion constitutes the findings of fact and conclusions of law of the Court. So ordered.