Albert H. NEWTON and Genevieve
Newton, Appellants,

v.

NEW YORK LIFE INSURANCE COM-
PANY, a corporation, Manufacturers
Life Insurance Company, a corporation,
Dominion Life Assurance Company, a
corporation, Appellees.

MANUFACTURERS LIFE INSURANCE
COMPANY, Appellant,

v.

Lloyd STEADMAN and Wayne W.
Wentner, Appellees.

DOMINION LIFE ASSURANCE COM-
PANY, Appellant,

v.

Lloyd STEADMAN and Wayne W.
Wentner, Appellees.

NEW YORK LIFE INSURANCE COM-
PANY, Appellant,

v.

Lloyd STEADMAN and Wayne W.
Wentner, Appellees.

No. 18674.

United States Court of Appeals
Ninth Circuit.

Dec. 10, 1963.

Kenny, Morris & Ibanez, Los Angeles,
Cal., and Hurley & Bigler, Yreka, Cal.,
for appellants.

Knight, Boland & Riordan, Burton L.
Walsh and Richard J. Kilmartin, San
Francisco, Cal., for appellee Manufac-
turers Life Ins. Co.

Pillsbury, Madison & Sutro, Eugene
M. Prince, John B. Bates, and Noble K.
Gregory, San Francisco, Cal., for appellee
Dominion Life Assurance Co.

Paul Goodsell Sullins, Altadena, Cal.,
for appellee Lloyd Steadman.

Before HAMLEY, Circuit Judge,
MADDEN, Judge of the Court of Claims,
and JERTBERG, Circuit Judge.

MADDEN, Judge.

These are appeals from judgments of
the United States District Court for the
Northern District of California, North-
ern Division. The suit was commenced
by the plaintiffs, appellants here, in
the Superior Court in Siskiyou County,
California. On valid grounds of diversity
of citizenship and sufficiency of the
amount involved, the suit was removed
to the United States District Court.

The action was for damages for alleged
fraud, concealment and misrepresenta-
tion by agents of the defendant insur-
ance companies, in the issuance of cer-
tain life insurance and annuity policies
and contracts to the plaintiffs. Each
of the defendant companies, with leave of
the District Court, filed a third-party
complaint against Lloyd Steadman and
Wayne W. Wentner making them third-
party defendants and claiming that, if
judgment should be rendered for the
plaintiffs against the defendants in the
original action, or any of them, then
Steadman and Wentner, the third-party
defendants, should be held liable to such

original defendants for the amount of such judgments.

By the consent of all parties, the action came on for the trial of one separate issue, before the court, sitting without a jury. That separate issue, as narrowed by a partial abandonment of the plaintiffs in their appeal was:

Whether the Incontestable Clauses (contained in the insurance policies involved in the action) are for benefit of the insurers and issuing companies as well as for the benefit of the insureds and annuitants.

The agreement of the parties submitting the single issue to the court provided that if the issue should be resolved in the affirmative, then the court would render a judgment against the plaintiffs and in favor of the defendants, and against the third-party plaintiffs and in favor of the third-party defendants. The issue was resolved in the affirmative by the District Court, and judgments were rendered accordingly. These appeals are from those judgments.

Each of the policies involved in this case contained the following language, or language not materially different from it in any respect relevant to this case:

"THE CONTRACT. This contract is issued in consideration of the application therefor, and of the statements and agreements therein contained and, together with the application (a copy of which is attached hereto and made a part here), constitutes the entire contract * *

* * * *

"No provision or condition of this contract may be waived or modified except by an endorsement signed by the President, Vice President or Secretary.

"INCONTESTABILITY. This contract shall be incontestable after it has been in force during the lifetime of the Annuitant for two years from date of issue."

All the policies as to which fraud, concealment and misrepresentation in their issuance was claimed had been issued more than two years before the plaintiffs filed their suit.

The defendants Manufacturers Life Insurance Company and Dominion Life Assurance Company and the third-party defendants claimed in the trial court that the Incontestability Clause had the effect of making the original defendants immune from suit for any wrong done by them or their agents in connection with the issuance of the policies. (Defendant New York Life Insurance Company did not join in the presentation of that claim.) The plaintiffs claim, on the contrary, that the Incontestability Clause in an insurance or annuity policy is for the benefit of the insured alone and not for the benefit of the insurance company.

The plaintiffs say that the common understanding is that the clause is for the benefit of the insured. They quote the language of this court in Richardson v. Travelers Insurance Co., 9 Cir., 171 F.2d 699, 701:

"It is generally agreed that the origin of the clause may be found in the competitive idea of offering to policy holders assurance that their dependents would be the recipients of a protective fund rather than a law suit [citing cases]. Too often had an insurer obtained a judicial determination upon maturity of the policy that insured had made an inaccurate statement in his application, or was guilty of fraud which resulted in the avoidance of liability under the policy. The clause remedied this situation by rendering the insurer's promise to perform in accordance with the statements and terms in the policy absolute upon the passing of a specified time, expressly subject only to the non-payment of premiums. Many states have evidenced their favor toward the incontestable clause by enacting legislation requiring it in life insurance policies."

The plaintiffs quote Webster's Third New International Dictionary (1961) as de-

fining the word incontestable, as used in insurance contracts, as meaning that:

"the payment of claims cannot be disputed by a life insurance company for any cause except non-payment of premiums or other reason specifically stated in the contract when the contract has been in force for a stipulated period (as one or two years)."

They quote from writers of text books on insurance the following:

" * * * the incontestable clause was inspired by the desire of the companies to protect the honest policy holder against the possibility that his statements or innocent mis-statements might operate to invalidate a claim brought at his death. The provision was justified on the grounds that such miscarriage of his plans could not, of course, after his death, have his own attention or the benefit of his own explanation and proof of his statement."

"The Life Insurance Contract," by Horne and Mansfield, 2nd ed., N.Y. 1948, p. 188.

"The incontestable clause was first introduced by life insurance companies on a voluntary basis in the latter half of the 1800's. It was introduced in an effort to counteract a growing attitude of public distrust toward the entire life insurance business. The feeling was due largely to the practice of some companies of taking full advantage of the fact that even relatively unimportant misstatements in the application for life insurance, if they were not literally true, gave the companies at that time the legal right to disaffirm the contract.

\* \* \* \* \*

"The use of the incontestable clause was the company's pledge to the insured and beneficiary that it would not rely on such purely technical grounds to disaffirm its contracts." Greider and Beadles, Law and the Life Insurance Contract (1960), pp. 166–167.

The court has found similar statements in other texts as follows:

"The purpose of the clause [the incontestable clause] is to prevent the insurer after a certain period of time (commonly two years) from denying a claim either on the basis of statements contained in the application or on grounds of concealment." Life and Health Insurance Handbook by Davis W. Gregg (1959), p. 135. (Mr. Gregg was President of the American College of Life Underwriters.)

In "Life Insurance" by S. S. Huebner, 4th Ed. (1950) at page 500, the author states the purpose of the clause to be as the other writers have stated it and says:

"From the standpoint of the solicitor the existence of the clause increases business by making the policy attractive to the public."

Mr. Huebner is apparently connected with the Huebner Foundation for Insurance Education of the University of Pennsylvania.

In none of these texts, with one exception hereinafter noted, nor in any of the standard text books on the law of insurance, have we found even a mention of the idea that an insurance company might use the clause as a defense to a claim against it for fraud or other wrong committed in the issuance of a policy. The exception noted above is in the Horne and Mansfield text, quoted supra, where the authors say, at page 187, that the effect of the clause is

"that after the stipulated period *the terms of the policy must be carried out—the contract* cannot be contested, and by implication, none of its terms can be contested by *either party*. The clause does not provide that the policy 'shall be incontestable by the insurer' any more than 'by the insured.' "

This is an odd specimen of written exposition. In the first sentence the authors find in the clause only an *implication* that an insurance company may have the ben-

efit of the clause. Yet in the second sentence the order of statement might suggest that the clause is primarily for the benefit of the insurer. If the authors are lawyers, they should be aware that an insurance company seeking to defend a suit on the ground of an *implication* in the contract in its favor is not in an enviable position.

The question presented by this case has, it seems, been presented to a court only once before. In Donahue v. N. Y. Life Ins. Co., D.C., 88 F.Supp. 594 (1949) the United States District Court for Connecticut considered the insurance company's defenses to a suit by the insured for reformation of the contract. The defenses were the incontestable clause, and laches and lack of equity in the insured's claim. The court dismissed the insured's claim for laches and lack of equity but said at p. 596:

> "Nor is dismissal here to be construed as approval of the defense of incontestability. The incontestable clause is for the benefit of the insured. * * *"

That is all that the courts have said on the subject in any case in which comment was relevant.

The plaintiffs say that the fact that no insurance company, except in the one instance just cited, has ever, in reported litigation, asserted the clause as a defense shows that the companies themselves, who invented the clause and write it into their policies, have not interpreted it as being for their benefit. The plaintiffs cite several reported cases in which it seems apparent that the incontestable clause, if applicable, would have won the company's case for it, yet it was not asserted as a defense. We think there is much force in the plaintiff's argument. It would be remarkable that the clause, in use for a century, would not have given rise to litigation and decision if the companies had thought they were entitled to rely on it.

The defendants Manufacturers and Dominion and third-party defendant Lloyd Steadman say that, in annuity cases, if the clause is not for the benefit of the insurer it is for the benefit of no one at all, it is wasted words, and to so hold is to violate the rule of construction of writings that every word in them is deemed to serve some purpose. This contention is based upon the fact that in the usual annuity contract the insured makes no representation about his state of health, or about anything except his identity and age, which subjects are expressly excepted from the incontestable clause. The plaintiffs explain the presence of the clause in annuity contracts as "boiler plate," verbiage which, because used in life insurance policies, has found its way into annuity policies issued by the same industry in much the same way as useless or obsolete language can be found in the writings of any profession or occupation. The plaintiffs also suggest that, just as some companies write life insurance at higher than normal premiums upon the lives of persons having bad prospects for normal longevity, they might write annuity policies on such persons with premiums lower than normal. In that situation, of course, the company would have a vital interest in the truth of the annuitant's representation that he was in bad health, and the annuitant would want the assurance of the incontestable clause that his policy would not be subject, indefinitely, to be cancelled on the basis of a claim by the company that he had exaggerated his ills when applying for the policy.

In a text on Annuities and Their Uses, 2nd Ed., by Clyde J. Crobaugh (1933), the author says, at page 122:

> "In some instances an annuity, known as an *impaired annuity*, may be secured under which special prices are allowed to applicants whose physical condition is such that the chances of normal life are greatly reduced. There are many companies, however, who do not grant annuities at lower cost to applicants who are in poor health."

Mr. Crobaugh had been the Supervisor of Educational Extension, Aetna Life and Affiliated Companies, and Chief of Pol-

icyholders' Service Bureau, Chamber of Commerce of the United States.

Although Mr. Crobaugh's book is about annuities, he has a section, beginning on page 99, headed "Incontestable Clause." He writes of state laws requiring certain annuity contracts to contain an incontestable clause. New York apparently had such a law. He does not state what kinds of annuity contracts such statutes apply to. He says, on page 100:

> "The incontestable clause is for the benefit of the annuitant. It would be an undesirable condition if the payment of the annuity could be disputed by the insurer many years after the contract had been issued when it might be difficult for the annuitant to submit proof of statements (except as to age and identity) made at the time the contract was secured."

The contention, then, that the incontestable clause has no place in annuity contracts unless it be there for the benefit of the insurer is not supported by this writer, who apparently was highly competent in the field. It does have a place in some annuity contracts, and therefore it is not remarkable that it gets written into others where it serves no purpose.

We are, then dealing with language which was unquestionably originated by insurance companies solely to reassure prospective policy holders and thus make it easier to sell them insurance; which language in 100 years has only once been, in any reported case, claimed by an insurance company to be for the benefit of the insurer, which claim was rejected by the court in which it was made; which language was treated by the only text writer to whom it seems to have occurred that it might be for the benefit of the insurer as being so only by implication. Upon this background we could not possibly hold that the language "clearly and unambiguously" creates this right in the defendant insurance companies. To the contrary, we hold that, against its historical background in view of the interpretation which the incontestable clause re-

ceives and has received in the insurance industry, the constantly reiterated statement that the clause is for the benefit of the insured correctly states its legal meaning.

The judgments of the District Court are reversed, and the cause is remanded to that court for further proceedings.